Mr. Chief Justice Shaekby
delivered the opinion of the court. The defendants, as the executors of Kyle, instituted this suit in the circuit court of Adams county, on a promissory note, given by the plaintiffs for the price of two town lots in the city of Natchez, which were sold by the executors, on the 1st of March, under an order or decree from the orphans’ court. For the purpose of resisting a recovery, Smith and Montgomery pleaded failure of consideration; and to establish the truth of the plea, they offered in evidence, the transcript of a judgment in favor of John C. Hunter, against Kyle, recorded in the circuit court of Adams county in 1828. Hunter’s judgment was revived by scire facias against the defendants as executors in 1827, and an execution issued thereon in December, 1830, which was satisfied in part, by the sale of some negroes. An alias fieri facias was issued in June, 1831, which was levied on the two lots, for the purchase of which the note was given by Smith and Montgomery, and the lots were sold by the sheriff. This testimony was objected to by the counsel for the plaintiffs below, for two reasons; first, that Hunter’s judgment was not revived by his scire facias against the heirs at law of Kyle, •which they insisted was necessary, before the land could be sold; *603 and that, therefore, the sale of the lots was void: and secondly’ that the purchaser of real estate who has no covenants of warranty in his deed, cannot set up a failure of consideration in an •action for the purchase money. The court sustained the objections, and the testimony was excluded, to which the defendants below took exceptions, and set out all the evidence ill the bill of exceptions. The deed is also set out, and contains no covenant of warranty. There is also a plea of payment, under which a note given by C. H. Kyle and Smith, and Lawson to Fisk a.s administrator of Schuyler, which appears from an endorsement on it, to have been paid by Smith, was offered in evidence.
Three questions are presented by the bill of exceptions for the consideration of this court. First, was a scire facias to bring in the heirs of Kyle, necessary before the lots could be regularly sold under the judgment of Hunter? Secondly, can the purchaser of ■the lots under the order of the court, set up a failure of consideration in the action against him for the purchase money, having no covenants of warranty in the deed? And, thirdly, was the offset offered, a good one it not having been filed with the plea, and no notice of it before the trial?
I. The only difficulty to be met in the solution of the first question will be found, 1 think, to grow out of the necessary consequences which result from our several statutory provisions, and the bearing which those consequences are to have in controlling the principles as settled by adjudication, both by the courts in England and the United States. The scire facias for the renewal of judgments, is expressly given by our statute. Revised Code, 185. 59. And such a mode of proceeding is recognised and sanctioned in various parts of the statute book; so that in general, we might apply the decisions which have been made on the several questions, arising out of this branch of the law; but there are several provisions in our law, which must be borne in mind, which so change the attitude of parties, and their rights to property, that they may producé exceptions to the general rule, and by implication dispense with the scire facias in certain cases, as against’ the heir at law.
For the purpose of showing how an exception may recur, I *604 will first notice what I take to be the settled rule. When a new person is to be benefitted or charged by the execution of a judgment, a scire facias is necessary to make him a party; but where an execution is neither to be beneficial nor chargeable to one who is not a party to the judgment, a scire facias is unnecessary. 1 Ld. Raymond, 245; 2 Tidd’s Practice, 1021. Let us make an application of this rule to the heirs of Kyle, and see whether they were to be benefitted, or charged by the execution, and therefore entitled to a scire facias, or whether they were neither to be bene-fitted nor charged, and therefere no scire facias was necessary. ■
On the death of an individual seised of an estate, it descends to his heirs, and they have not only the right of property, but the right of possession also, immediately after the death. This principle, always recognised, has been incorporated into our statute law. Revised Code, 41, 550, The administrator, by virtue of his office, acquires no right to the real estate of his intestate, nor to the possession of it, except a temporary possession, or temporary control in one instance, for the purpose of finishing a growing crop. The right of an executor is no greater unless it be given him by the will. If the right of possession be in the heir, the fair presumption is,, that he has availed himself of that right, by taking actual possession. In some cases, we know, that executors and administrators, from a false notion of their rights, take possession of the land, and either lease or use it. When they do so, the proceeds are properly assets in their hands; the assent of the heir being presumed, but strictly they have no right to the possession or profits. By a provision in our statute, Revised Code, 42. 552, the lands, in case of deficiency of personal estate, are made chargeable with the debts of the deceased; but this is only a general liability to take effect on condition; and gives the administrator no power over the land. The 98th and 99th sections of the same act, provide, that in case the personal estate be insufficient for the payment of debts, the orphans’ court, after due-notice, given to all interested on a proper showing as to the necessity of the measure, may order and decree, that a part or the whole of the real estate shall be sold to satisfy the debts, and the executor or administrator is directed to sell accordingly, and make *605 titles to the purchasers. The proceeds of the sale become assets in his hands, but the law does not give him a right to possession in order to make the sale. He possesses nothing more than a naked power to sell, under which the purchaser may enter, and the estate passes by operation of law. The heir, from the time he takes the estate, holds it subject to the liabilities imposed by law. The bare existence of the liability does not of itself supersede the necessity of scire facias to bring in the hen, when satisfaction of an existing judgment is intended to be made out of the land; so that, in general, it may be considered necessary to proceed by scire facias, so long as the heir has an interest in the land.
The very reason which shows the necessity of this writ against the executor or administrator will also show that it is necessary against the heir where land is to be made chargeable. It is necessary against executors or administrators, because they have the possession of the personal property and hold it for certain purposes, to which it is their duty to apply it. They, therefore, have an interest in it, and have a right to claim an opportunity to protect their possession and interest, by showing, if they can, that the judgment has been satisfied or released. So it is with the heir in regard to his lands. He has an interest which he may protect and is entitled to his day in court, while he has an interest, and that interest is liable to be taken for the satisfaction of the judgment to which he is not a party; he is clearly within the rule of law. But suppose he has lost that interest by a proceeding under the last two sections of the statute referred to, can there be any reason for requiring a scire facias to revive against him? The execution in that event would neither be chargeable on nor beneficial to him in regard to the land which had been sold under an order of the court, because that interest was gone by due course of law. Now if Kyle’s heirs still had an interest in the land at the time of sale, they should have been made parties; but if their interest had ceased, it was unnecessary. In order to test this fact, we must examine the judgment lien and proceedings under the decree of the court.
At the time of Kyle’s death Hunter’s judgment was a subsist *606 ing lien on all his properly, or that part of it at least, which is the subject of dispute; but it was nothing more than a general lien, never having been made specific by a levy. • Independently of the judgment lien, all the creditors of Kyle, by the 52d section of the orphans’ court law, had also a lien for their respective demands, or at least the property was liable to them; which liability could only be enforced by due course of law, if the executors -would not voluntarily pay. Hunter was evidently in a better situation than the rest of the creditors, because he had nothing to do but to revive his judgment, and proceed to levy; the estate not being insolvent. If he desired to levy on personal property he had only to revive against the executors. He did so, and did actually levy and obtain part satisfaction. At that time he could have levied on the land in question, because he had not revived against the heirs, to whom it properly belonged; but subsequently, circumstances occurred which removed the only barrier to his right to levy on the lots, and an examination into the force of those circumstances will show, I think, that in this particular case a scire facias against Kyle’s heirs, was unnecessary, or_at least the want of it did not vitiate the sale of the lots.
Hunter sued out scire facias to revive in February, 1829, and had his judgment regularly revived against the executors in November, 1829. This proceeding was certainly regular as far as it went. He was not obliged to revive against the heirs unless he intended to claim satisfaction out of their property, and that he did not revive against them could not in any way affect his scire facias against the executors.
The executors could not have pleaded, that he had neglected to make the heirs parties to the scire facias. And suppose that a sufficient quantity of personal property was not to be found, and he afterwards wished to subject the real estate, he could have issued his scire facias at any time for that purpose, and the heirs could not have defeated it by pleading that they were not brought in in the first instance. This Hunter could have done at any time, and while there was a reason which made it necessary, it would have been the proper course. But before he levied on the lots, the reason which rvould have made a renewal against *607 the heirs necessary ceased. The sale of the lots under the decree of the court, took place on the first of March, 1830. Before any such decree was made, the heirs had due notice, which notice is virtually a scire facias to all persons interested. An opportunity had been afforded to heirs and all others to interpose their claims. A decree had passed subjecting the land to sales, and a sale actually was made, by which the heir was divested of all right. Where then can be the necessity of a scire facias against him? He in regard to these lots is strictly within the rule above laid down neither to be charged nor benefitted by the execution, and therefore need not be made a party. Hunter in his judgment had alien which he had a right to enforce; in doing so,however, the law required him to pay a due regard to the interest of other persons; but the heirs at law of Kyle, after the sale of the lots, had no interest in them, and he was not bound to bring them in, merely because the had once had an interest. As well might he be required to bring in all previous owners of the property.
But how is the interest of the purchaser at the executor’s sale to be protected? They acquired a right to the lots on the 1st of March, 1830. Hunter, previous to that time, had not taken the necessary steps to subject it to his judgment by scire facias against the heirs, and could not then have sold it. Before he had any right to levy on it, the title and the possession passed to the purchaser Smith. At the very time,"’ therefore, that it became unnecessary for him to revive against the heirs, in consequence of their loss of interest,-if became necessary that he should bring his scire facias against Smith, the terre tenant in ■whom the right vested,-when it passed from the heirs and who had purchased, subject certainly to nothing more than the general judgment lien.
Smith was in, under the estate of Kyle, and should have had an opportunity fof showing that his estate was not properly subject to the incumbrance. Pie was a new person to be charged by the execution of the judgment, and could claim to be heard. That the terre tenants must be brought in by scire facias, is as well settled, as that such a proceeding is necessary against the heir, and depends upon the same reason, to wit, their interest in the land. 7 Cowen,740; 20 Johns. Rep. 106. The sale made, as it was; *608 without a revival, was not, however, void, but only voidable. It was good until regularly set aside, which we cannot do in this collateral manner. The title of the purchaser under it, for all the purposes to which our present inquiry can be extended, was a good one. 16 Johns. Rep. 572; 1 Cowen, 736; 2 Sellon’s Practice, 190.
2. The sale being good until set aside, and the title vested in another person, we now come to the second point, to wit, can the failure of consideration be set up without covenants in the deed, as a defence to the recovery of the purchase money?
If the deed contained covenants or a warranty, the defence would rest upon a different ground; but it is nothing more than a quit claim deed, or transfer of Kyle’s title without any warranty of its goodness, or against incumbrances, and we are, therefore3 relieved from deciding a question that has been much discussed, and differently decided, viz., whether a failure of consideration is a good defence in an action for the purchase money of real estate, when there are covenants in the deed to which the party can resort. Where a total failure has happened, this defence, when the, deed contained covenants, has been allowed for two very obvious reasons. 1. To prevent multiplicity of actions, since it would be useless to permit the vendor to recover the purchase money, and turn the vendee over to his action on the covenants to recover it back; and 2. It would be unjust to allow a party to recover a sum of money which had been promised in consideration of a warranty which had turned out to be false.
Th'e covenants in a deed, show that the purchaser supposed he was buying a good property, and that he intended to provide an indemnity, if it should turn out otherwise. They also show that the seller intended to convey a good title, and to take upon himself the responsibility of making proper reparation, if it should be bad. No such inferences are deduced when there are no covenants; on the contrary, the inference is, that the seller intended to convey no more, nor become liable any further than he has expressed in the contract, and to these terms, the purchaser is supposed to assent. Conveyances of land must be made in writing, and the instrument itself is always the best evidence of the extent *609 of the contract, and the liabilities of the contracting parties. The law does not require an individual in making his contract to say what he will not be bound to do; but how far he will be bound, and he cannot be held liable for more.
In a quit claim deed, the party does nothing more than to acquit the grantee from any title or right of action which he may have, and the fact of taking nothing more than a quit claim, would in general, imply a knowledge of doubtful title. The deed is evidence of what the party intends to sell, and it would be unfair to infer that he intended to do more than what he expressed.
Parties to deeds are presumed to know that a covenant is necessary to hold the seller to warrant the title, and should make their contracts accordingly. Chancellor Kent, in one of the authorities to which I have referred, says that the doctrine of caveat emptor, is a fixed maxim, applicable equally to the transfer of lands and chattels.
By an inspection of the deed, it will appear that the executors only conveyed Kyle’s interest, and made no warranty of his title; probably they could have made none without becoming individually liable. Now in order to let in this defence Ave should be compelled to presume that the sellers intended to sell more than a doubtful title, and that the purchaser supposed he was buying a property that was unincumbered. This could not be done under any circumstances, but more especially in the present case, with facts showing directly the reverse.
The judgment of Hunter was a lien on the property at the time of sale, and being on the record of Adams county, was, according to authority, (12 Wheaton, 180,) notice to the purchaser. The law seems to be Avell settled, that a purchaser without covenants takes all the risk of title. This rule may operate oppressively in some cases, but the rules of law are general, and cannot yield to exceptions. .2 Thomas’s Coke, 355; 2 Caines’s Rep. 188; 1 Johns. Chan. Rep. 213; 2 Ibid. 523; 2 Kent’s Com. 371.
3. The only remaining question is in regard to the admissibility of the offsets. It-appears, by the bill of exceptions, that the note was not filed at the time of pleading, nor was it produced until the trial. The party had no other notice of it than that which is *610 appended to the plea, which of itself is too vague to put him on his guard. Our statute requires that the offsets should be filed at the time of pleading, or it cannot be admitted, unless it be so particularly set out in the plea as to apprise the opposite party of the nature of it; andas this was neither pleaded, nor set out in the plea, it was properly rejected.
Judgment affirmed.