## FERGUSON vs. DENT.

In a deed of conveyance, a part of the land conveyed was described " *as lying west, and adjacent to the tract of land first above-mentioned.*" *Held,* to be merely words of description, and not amounting to a covenant that the land did lie west, and adjacent to the land first mentioned.

ERROR to St. Louis Circuit Court.

GEYER *and* DAYTON, *for Plaintiff in Error.*

1. If it be said in a lease, that the lessee shall repair, &c., an action will be for not repairing.—3 Com. Dig., 237.

2. If a man assign an apprentice, though not assignable in law, it amounts to a covenant that the apprentice shall serve the assignee.—1 Lord Raymond, 683.

3. If land be conveyed, as bounded on the way on one side, this is not merely a description, but a covenant, that there is such a way.—Parker et al. *vs.* Smith et al., 17 Mass., 413.

4. The words being, "sound wind and limb, and free from disease," were held to amount to an express covenant.—Cramer *vs.* Bradshaw, 10 J. Rep., 484.

5. It is no answer to say that the situation of the land might have been known to the plaintiff. It would not avail the covenanter, if the covenantee had actual knowledge.—8 Mass. Rep., 146; 9 *Ibid.*, 495.

SPALDING *and* TIFFANY, *for Defendant.*

1. The words in the deed, assumed in the first breach to be a covenant, that the eighty acres lay west and adjacent to the other tract, were mere matter of description, and no covenant. (2 Johns. Rep., 37.) If a deed convey a lot containing 600 acres, with covenant of seizin, does not cover the quantity, and is not broken, if there be less than 600 acres. (8 Bing. Rep., 48; 21 Eng. Com. Law Rep., 217.) That words of description are not warrantees. This was of a colt:

*Ferguson vs. Dent.*

the court remarks, that, whatever a party warrants, he must make good; but if he sells by description, and a latent defect is discovered, the buyer must go farther and prove a scienter, in order to recover. (Greenleaf's Ev., 32.) Estoppel does not apply to that which is mere description in a deed, &c., such as quantity, whether arable or meadow, the number of tons, &c., as those are supposed merely incidental to the principal thing, and not "*to have received the deliberate attention of the parties.*" See, also, the note at same page; showing, that the reason is, that the *attention of the parties has been but slightly directed* to those matters. The same reason exists why words of description should not be construed into a covenant, that forbids their operating by way of an estoppel, *viz.*, that the attention of the parties is but slightly directed to those matters.

2. Those words were not intended by the parties as a covenant:

1st, Because the statements are as mere matter of description, and not in the formal mode, usual in deeds, where covenants are intended.

2d, Because there is a covenant of general warranty in the deed, thus indicating, that the parties knew how to frame covenants, when they intended to have them.

3d, To hold these words to be a covenant, is *unprecedented and dangerous.*

1. Though deeds of land are among the most common transactions, and suits on the covenants in them frequent, yet no cases of suits, or similar claims of description are produced, except a single one in this Court.

2. If the suit can lie, then a suit can be sustained on every variance of description in a deed, from the fact: and thus conveyances will be converted into traps for the unwary. Nothing is more common than partial misdescriptions in deeds; thus, those portions of deeds on which little attention is usually bestowed, are converted into warranties. Hitherto they have been considered as mere description, in good faith, by the grantor of the land sold, and, if not fraudulently misdescribed, that he was not answerable. If, knowingly, he misrepresents, or misdescribes, he is liable for any injury done, as has been decided in Pasley *vs.* Freeman, 3 T. Rep, 51; a leading case, which has been followed in England and America ever since.—Chandlor *vs.* Lopes, 2 Croke, James II.; and the note to these cases in Smiths' Leading Cases.

3. The only case I have seen, countenancing the doctrine contended for, is in 3 Miss. Rep., 578; Campbell & Moore *vs.* Russell. This case, as reported, discloses nothing on this subject. In vain will the reader seek for the remarkable doctrine, that *mere words of description of the land conveyed are covenants, are warranties,* on which the grantor is liable, if there be a mistake.

That case differs also from the present, as it appears from the deed itself, that the main motive of the purchase there was to secure to the grantee the very farm which he occupied, and thus, that the matter of description was a matter of substance, and not a mere incidental affair.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of covenant, brought by the plaintiff in error upon a deed conveying to him certain tracts of land.

By the deed from Dent and Wife to Ferguson, the grantors "granted, sold, aliened, enfeoffed and confirmed" to him a tract of land, lying in the State of Missouri, containing 125$\frac{12}{100}$ acres, being the south-east fractional quarter of section No. 13, township 44, range 10 west, represented in said deed as having been entered by P. Dillon.

The deed further conveyed "another piece of land, being the unsold residue of a larger tract of land, of 160 acres, the said unsold residue hereby conveyed containing eighty acres; said larger tract being a location made by Dillon, under a New Madrid certificate, number 282, conveyed to him by Prior Quarles, who acquired it of Robert Simpson, to whom it was conveyed by the heirs and representatives of Eustache Peltier, the said eighty acres being an undivided interest, and lying west and adjacent to the tract of land first above-mentioned."

In conclusion, the grantors covenanted with the said Ferguson, his heirs and assigns, that he would forever warrant and defend the tracts of land above-granted, and every parcel thereof, unto him, the said Ferguson, his heirs and assigns, against all persons lawfully claiming the same, and against all titles, and liens, and incumbrances whatsoever.

The declaration alleged, that by said deed, Dent covenanted with the plaintiff, among other things, "that the said eighty acres of land, last above-mentioned and described, *lay west and adjacent* to the tract of land first in said deed mentioned; and that the said Dent and his wife were, at the time of the execution of said deed, seized of an indefeasible estate in fee simple in the real estate by said deed granted;" and assigned for breaches—*first*, "that the said eighty acres of land, last in said indenture described, *did not lie west and adjacent* to said tract of land first in said indenture mentioned, but lay in another and different direction from said tract, and in another and different place;" *second*, that Dent and wife were not seized of an estate in fee at the time of making the said deed in said lands, &c.

The defendant set out the deed, on oyer, and demurred generally, and the demurrer was sustained by the court.

The second breach assigned is conceded to be bad, as the words "granted, sold, aliened, enfeoffed and confirmed," do not imply a covenant of seizin, and the words from which, by our statute, such covenants are implied, are not used in the deed.

The only question is, whether the words of the grant, "the said eighty acres, being an undivided interest, and lying west and adjacent to the tract of land first above-mentioned," amount to an express or implied covenant, that the said eighty acres did lie west and adjacent to the said tract first conveyed.

This is a question upon which, undoubtedly, great regard should be paid to judicial precedent, if there be a continuous and decisive series of adjudications on either side of the proposition. It is emphatically important, that the construction of conveyances should be uniform, and it is of more consequence that the meaning of words and phrases (which, in themselves, fluctuate with the innovations incident to language,) should be consistent and fixed, than that their first interpretation should accord with reason, or conform to their ordinary acceptation.

It is plain, that the clause in this deed, which has been declared upon as a

covenant, is not an *implied* covenant. An implied covenant is an agreement raised by implication of law, between two or more persons, from certain technical expressions used in the deed. Selwyn's N. P., title, "Covenant." Thus, the word "*do*," or "*give*," in a feoffment, the words "*give and demise*," in a lease, and the word "enfeoff," in a lease for years, have all been, by the uniform de-termination of the courts, held to imply certain covenants. So, the words, "grant, bargain and sell," by express provision of our statute, imply certain covenants of seizin, freedom from incumbrance, &c. But neither by common law or statute, do the words, "*being* or *lying*," imply any covenant that the fact is as it is represented to be.

. The question is, then, narrowed down to the single point, Is this an *express* covenant?

It is true, that no precise form of words is necessary to constitute an express covenant; any form of words, or mode of expression, in a deed, which clearly evinces an agreement, will amount to a covenant. (Selwyn's N. P., p. 343.) But it is well settled, that expressions in an instrument, which are mere *description*, do not constitute a covenant. No authority has been produced, and none, I apprehend, can be produced, in which any court has held mere words of description to constitute a covenant.

It must be admitted, that, in determining whether the clauses of a written instrument are matters of description only, or amount to a covenant, some of our state courts have gone very far in their construction of bills of sale of personal chattels, to confound all discrimination between matters of description and of agreement. The case of Cramer *vs.* Bradshaw, (10 Johns. Rep., 484,) cited by the counsel for the plaintiff in error, is an instance of this kind. The defendant bargained and sold to the plaintiff, "a negro woman slave, named Sarah, aged about thirty years, being of sound wind and limb, and free from all disease," and by the same instrument *covenanted* to warrant and defend the slave, so sold to the plaintiff, against the defendant, and all others. The court settled the point·raised on this instrument in a few words. They declared, "The words in the bill of sale are an averment of a fact, and import an agreement to that effect. The words were not used as a mere description of the slave; they amount to an express, not an implied covenant; to a warranty of the soundness of the slave." Now, it is a little singular, that these words, "being of sound mind and limb," &c., were held an express covenant, when the vendor in the same instrument expressly covenanted for the title, and thereby indicated his knowledge of the apt phrases proper to express a warranty. Hence, in the case of Saper *vs.* Breckenridge, decided by this Court in 1835, (4 Mo. Rep., 14,) the authority of this case in Johnson is entirely disregarded, and the same, or similar expressions in a bill of sale, are construed as matters of description, and not of covenant. So, in the case of Bacon *vs.* Brown, (3 Bibb, 35,) and —— —— (2 *Ibid.*, 616,) the Supreme Court of Kentucky considered such language in a bill of sale as mere representation, and not amounting to a warranty. The court relied upon the circumstance, that the writing contained an express warranty of title, as conclusive evidence that no warranty of soundness was intended. They suppose, if such a warranty had been

intended, the warranty would have been so worded as to embrace both soundness and title. In accordance with these decisions in Kentucky and this State, is the case of Budd *vs.* Fairmaner, decided in the Court of Common Pleas, 8 Bing., 46. In this last case, the written instrument produced was a receipt, in the following words: "Received of Mr. Budd £10, for a gray four-year-old colt, warranted sound in every respect." The Court held the warranty to apply only to the soundness of the colt, and not to his age; considering the first part of the receipt was mere description or representation.

In the case of Lanier *vs.* Auld, 1 Murphy's Rep., 138, the defendant, in his written contract for the sale of a slave, warranted "the aforesaid slave to be sound and healthy," and the Supreme Court of North Carolina held, that the word "slave" was *descriptio personæ*, and that the writing contained no warranty that the negro was a slave.

These cases are referred to, not as decisive of the question under consideration, but with a view to show, that the difference of opinion among courts, as to what form of words constitutes mere description, and what will create a covenant, has been confined chiefly to informal instruments, transferring personal property; that the courts, in determining particular expressions in contracts of this character to be covenants, have done so upon the ground, that the words purport, in their estimation, an *agreement*, an express covenant, not an implied one; and that the words so declared to be a covenant are, *therefore*, not words of description.

In conveyances, the same diversity of opinion is not to be found. If we except the case decided in 1834, by this Court, which we shall advert to presently, we have not been referred to any case, (unless the case of Parker and Others *vs.* Smith and Others be such an one,) in which the descriptive part of a deed, whether relating to quantity or locality, has been construed as a covenant. In Mann & Toles *vs.* Pearson, (2 Johns. Rep., 37,) the Supreme Court of New York determined a question, arising on the construction of a deed, very analagous to the present. The defendant agreed to convey to the plaintiff "lot No. 78, in the township of Lysander, containining 600 acres;" and the question was, whether a deed, conveying lot No. 78 in the township of Lysander, which lot, in truth, contained but 421 acres, was a compliance with disagreement. The remarks of the Court, in determining the case for the defendant, will illustrate the views entertained by them relative to mere words of description in a conveyance. Judge Spencer, who delivered the opinion of the court, in which Judge Kent and Tompkins concurred, said: "The enumeration of quantity is not of the essence of the contract; it is a matter of description merely. The only certainty in the present case is the lot, and this alone is the subject of the covenants. The books afford very little information on this point. It may be observed, that there are no cases to be found which warrant this action, and though probably the case has not occurred in this State, it has in Connecticut. The Supreme Court of that State, in the case of Snow *vs.* Chapman, (1 Rovt., 528,) decided, that where lands were specifically bounded and described, and were stated in the deed to contain 110 acres, an action of covenant would not lie on the covenants of seizin, though in truth the quantity was only ninety acres; because the deed granted nothing but

the lands within the boundaries, and to those lands only the covenant related. I cite this decision as an opinion of a court of high respectability, proceeding upon the English Common Law in the case before them.****I will only add, that in my own experience, and I may say with propriety, in the universal opinion of conveyancers, the enumeration of quantity, after a description of the subject, is superfluous and immaterial, and, in any view, only matter of description."

In accordance with the opinion of the Supreme Court of New York, is the opinion of the Supreme Court of Massachusetts, in the subsequent case of Powell *vs.* Clark, 5 Mass. Rep., 356. This was a conveyance of a tract of land, by designated metes and bounds, and representing the said tract as containing a certain number of acres, when, in truth, it did not contain the quantity represented. The action was brought upon the clause of the deed representing the quantity conveyed as a covenant; and the learned Chief Justice Parsons, in giving the judgment of the court, observed, "In a conveyance of land, by deed, in which the land is certainly bounded, it is very immaterial whether any, or what quantity is expressed; for the description by the boundaries is conclusive. And when the quantity is mentioned, in addition to description of the boundaries, without any express covenant that the land contains that quantity, *the whole must be considered as mere description,* although the quantity mentioned is an uncertain part of the description, and must yield to the location by certain boundaries, if there is a disagreement, whether the quantity mentioned is more or less than the quantity actually contained within the limits expressed. The covenants declared on, therefore, do not appear to have been made by the defendant, and the declaration must be adjudged bad."

These cases are sufficient to show the settled doctrines of the courts in relation to that part of a deed which purports to describe the quantity of land conveyed, and, in principle, no difference is perceived between descriptions of quantity and descriptions of locality. When a deed purports to convey land by metes and bounds, and describes the land as "containing so many acres," or as "lying west and adjacent to" another designated tract, it is not easy to see any reason why the words, "containing," &c., should be held words of description, and the words "lying west," &c., should be construed as a covenant. The one is as much matter of description as the other, and the purchaser may suffer as much inconvenience and hardship, by getting a smaller quantity of land than he was led to believe he had purchased, as by getting the same quantity in a different place. In either case, he relies upon his own knowledge of the situation and extent of the land he purchases; or, if ignorant of both, he can secure himself by express covenant.

The case of Parker & Others *vs.* Smith & Others, 17 Mass. Rep., 144, is relied upon as asserting a different principle. That was an action of trespass in the case for obstructing a way. The plaintiff derived title from one Russell, who, in the conveyance of the lot, described it as bounded south and west by ways or streets, and the deed expressly conveyed "a privilege in all the ways or streets that are or shall be laid out in the new settlement, to be used in common with the other owners of the lots," &c. The question was, whether those claiming under the

*Ferguson* vs. *Dent.*

grantor could be permitted to deny that the plaintiff's lot was bounded south and west by a street or way, and the court held, that the grantor and his heirs were estopped from denying that there was a street or way to the extent of the land, on those two sides. Judge Parker, in delivering the opinion of the court, said, "We consider this to be, not merely a description, but an implied covenant, that there are such streets." This is obviously a mere *dictum* of the learned judge, for it was not necessary to hold the clause of Russell's deed an implied covenant, in order that Russell, and all claiming under him, should have been estopped from denying what was represented in the deed. A grantor, and, in some cases, even strangers (Carver *vs.* Jackson, 4 Peters' U. S. C. C. Rep., 1,) may be estopped by mere *recitals* in a deed, and yet it does not follow that such recitals are covenants, express or implied. We do not consider this case as at all impugning the doctrine established by the same court, in Powell *vs.* Clark.

We come now to the case of Campbell & Moore, administrators of Burnside, *vs.* Russell, 3 Mo. Rep., 579, which is mainly relied upon as settling this question in favor of the plaintiff in error. The reported opinion of the court does not disclose anything at all inconsistent with what we suppose to be the settled doctrine in England and in the United States; but we have been referred, by the counsel for the plaintiff, to the record furnished from the clerk's office, as exhibiting the points made, and decided more fully than can be inferred from the printed decision. I have examined these papers carefully, and find the following to be the history of this case:—William Russell conveyed to Burnside four hundred arpens of land, "it being the same tract of land on which the farm now occupied by the said Burnside is situate, and which farm is principally, or entirely included in the boundaries of the said four hundred arpens, it being part of the settlement and improvement, right and claim of William Miller, which said Miller conveyed to the said Russell, by deed, bearing date, &c., and which said four hundred arpens is separate from the three hundred and fifty arpens of the same tract, (which said Miller had previously sold to Thomas Mason,) by a conditional and agreed-upon line, according to a plat of the said division, one copy of which plat is in possession of said Burnside, and another copy thereof of the said Thomas Mason, and the original with the said William Russell: to have and to hold, &c." The deed concluded with a covenant of general warranty.

The plaintiff assigned, as breaches of the covenant—first, that the tract of four hundred arpens of land so granted, &c., was not, and is not, the same tract of land on which the farm then occupied by the said James Burnside was situate, but another and a different tract, situate at another and different place; and that the said farm was not, and is not, principally or entirely included within the boundaries of the said four hundred arpens, but on the contrary thereof, the said farm was and is wholly without and beyond the said boundaries, and that the said tract of land was not, and is not, a part of the settlement and improvement, right and claim of William Miller, and that the said Miller had not conveyed the same to the said Russell, as in said covenant is supposed; and second, for breach of the covenant of warranty, that said Russell did not warrant and defend, &c., but on the contrary, the said land and farm, so as aforesaid granted, &c., did, at the date

of said deed, appertain and belong to the United States of America, &c.; that the United States had conveyed to one Bennett, and that said Bennett had evicted the representatives of Burnside, by lawful title, &c.

To this declaration, the defendant pleaded fifteen pleas, on the first, second, fourth, eighth, thirteenth and fourteenth of which, the plaintiff took issue, and demurred to the third, tenth, eleventh, twelfth and fifteenth. The plaintiff replied specially to fifth, sixth, seventh and ninth pleas. The Circuit Court, considering the pleas demurred to as sufficient bar to the action, or rather considering the declaration insufficient, gave judgment for the defendant.

The case was first argued and determined at the June term of this Court, 1833, at which term the judgment of the Circuit Court was affirmed. The opinion delivered at that term is not published, nor is it preserved among the papers; but it would seem, from the petition for a re-argument, that the court had intimated, that these representations in Russell's deed, as to the locality of the land conveyed, were not covenants.

At the October term, 1834, the opinion of the court was delivered, and is as follows: "It being our opinion, that it is not a sufficient assignment of the breach of warranty, that the land, at the time of the execution of the deed, belonged to the United States, and that there are other breaches in the declaration well assigned, and the judgment of the Circuit Court against the plaintiffs being general, its judgment is therefore reversed, and the cause remanded."

As the only other breaches assigned in addition to the breach of general warranty, related to those clauses of Russell's deed which described the locality of the land, and his title from Miller, we shall not attempt to draw any distinction between that case and the present. In substance, they are obviously alike: though the case of Campbell & Moore *vs.* Russell presents a stronger appeal to the equitable feeling of a court, in principle, it must be admitted to rest upon no stronger grounds than the present. Upon principle and authority, we think we have shown that decision cannot stand, and it becomes important to inquire whether, under the circumstances, this Court should now adhere to it?

We are constrained to disregard this decision for the following reasons:

*First:* it is manifest, that this decision of the court, in Campbell & Moore *vs.* Russell, has had no influence upon the construction of conveyances in this State. As the decision touching the point in controversy was not published, no conveyancer could have been misled, and no deed could have been made on the faith of the construction given by the court to the terms of Russell's conveyance. There is, therefore, no principle of public policy which could induce this Court now to depart from the settled law of the land, because of any known innovation upon that law by previous adjudications.

*Second:* no reason or authority is given for the decision. From the very brief manner in which the case is disposed of, we might infer, that the mind of the court was not specially directed to a consideration of the sufficiency of the first breaches assigned in the declaration. Their attention would seem to have been chiefly directed to the pleas, some of which were considered bad, and others decided insufficient. Be this as it may, as highly as we respect the opinion of

our predecessors, and disposed as we are to follow their lead on all doubtful questions, we do not feel bound to adhere to a decision which could have had no practical influence in our courts, or in the country, and for which no reason is given and no authority cited, and in opposition to which is found an unbroken current of decisions in other courts.

The other judges concurring, the judgment of the Circuit Court will be affirmed.