# Tobin *v.* Bell & McMahon.

*Bill to enforce Vendor's Lien.*

1. *Failure or defect of title; when not available to defeat recovery of purchase-money of land.*—In the absence of fraud, mistake. or warranty, defect or failure of title in the vendor, is not available to the vendee to de-feat or abate recovery for the purchase-money of lands.

2. *Same.*—B. purchased a lot, taking the agreement of R., who professed to be agent of the owner, to procure conveyance. B. endorsed on the agree-

6₁ 125
93 254

61 195
112 477

61 125
126 422
126 423

[Tobin v. Bell & McMahon.]

ment that the purchase was made for T.'s benefit, and authorized a convey-
ance to him.   T. afterwards sold this lot, and two others to which he had
title, to B., agreeing, upon payment of the deferred installment of purchase-
money, "to return the original title papers," properly endorsed to B.   No
fraud or mistake occurred.   R.'s authority was repudiated, no title could be
obtained to the third lot, and B., who entered under the contract with T.,
was evicted.   The value of the other two lots, the title to which was not dis-
puted, did not exceed the cash payment, while the value of the third equalled
the amount of the deferred payment,—*held :* T. was entitled to enforce a
vendor's lien for the whole amount of the purchase-money, against the
other lots.

APPEAL from Chancery Court of Sumter.

Heard before Hon. A. W. DILLARD.

Tobin, the appellant, filed his bill against T. D. Bell and
R. G. McMahon, composing the firm of Bell & McMahon,
to enforce a vendor's lien on certain lots in the town of
Gainesville, known as "lots numbers 24, 25 and 26."

Lots Nos. 24 and 26 had belonged to said T. D. Bell,
and he in 1863, as the agent of Tobin, contracted for the
purchase of lot No. 25, with one Reavis, who claimed to have
authority to sell, and to represent G. P. Beirne, the executor
of the estate of Andrew Beirne, deceased, to whom said lot
belonged.   Tobin furnished the amount agreed on with
Reavis, and Bell paid it over, Reavis delivering him the fol-
lowing written instrument:

"I have this day sold to Turner D. Bell, for the sum of
twenty-five hundred dollars cash in hand paid, lot number
twenty-five (25), in block eight (8); and I agree to make
him, his heirs or assigns, a good title to said lot, the same
being in the town of Gainesville, Alabama.   Witness my
hand and seal, Oct. 23, 1863.

"GEORGE P. BEIRNE, [L. S.]
"By T. REAVIS, Attorney."

Bell made thereon the following endorsement: "The
within deed was for the benefit of J. W. Tobin, and I hereby
authorize Judge Reavis to make a deed for the same as
above.   Turner D. Bell."

In January, 1866, Tobin, who had not received any deed
to lot 25, though Scott, his agent, sold said lot 25, together
with the other two lots which Tobin had bought of said Bell,
to said Bell for the firm of Bell & McMahon, for the sum of
$3,000, one-third of which they paid in cash, executing a
note for the remainder, due in twelve months.   Scott deliv-
ered to them the following instrument in writing:

"GAINESVILLE, ALA., January 3, 1866.

"I, Francis S. Scott, jr., agent of John T. Tobin, have

[Tobin v. Bell & McMahon.]

this day sold to Bell & McMahon lots 24, 25 and 26, in block 8, in Gainesville, conditioned as follows: Said Bell & Mc-Mahon are to pay $1,000 in cash, and give a note at twelve months for $2,000 in full payment for said lots; and I as agent agree to return to said parties the original title-papers endorsed by T. D. Bell to John W. Tobin, properly endorsed to said Bell & McMahon, upon payment of said note.

"JOHN W. TOBIN,
"By F. S. SCOTT."

Bell & McMahon entered into possession of all three lots, but finally abandoned lot No. 25, because Beirne refusing to recognize Reavis' authority to sell, would not make a con-veyance, but brought ejectment to recover the land. Lots 24 and 26 were not worth over $1,000, the amount which was paid in cash, while the evidence tended to show that lot 25 was worth at least $2,000.

Tobin brought suit in the Circuit Court and recovered judgment against McMahon for the full amount of the de-ferred note, though the latter attempted a defense on the ground of a failure of title to lot 25. Execution on the judg-ment having been returned " no property," Tobin filed this bill.

No fraud, false representation, or deceit is charged upon Tobin, and the proof shows that Bell knew quite as much about the state of the title as Tobin did.

Upon final hearing, upon bill, answers and testimony, showing the foregoing state of facts, the chancellor dismissed the bill, and this decree is now assigned as error.

SNEDICOR & COCKRELL, for appellant.—No fraud or mis-take is charged, and Bell knew all about the title.—*Steele v. Adams*, 21 Ala. 534; 24 Ala. 446; 8 Ala. 543. Besides, the judgment at law is conclusive, as to the question sought to be raised here.—*Brown v. Isbell*, 11 Ala. 509; 26 Ala. 564; *Thompson v. Christian*, 28 Ala. 399.

COOKE & LITTLE, and WATTS & SONS, *contra.*—The bill is in its nature a bill for specific performance, and he who asks a court of equity to interfere in such a case must do equity. Tobin has been fully paid for the lands to which he had title. What is due, does not exceed the value of the lot, to which he has no title. It is inequitable for him to coerce payment in full, and yet convey title to only one-third in value of the land. The parties both supposed Tobin would get a good title, and the defect or failure, was a case of mu-

[Tobin v. Bell & McMahon.]

tual mistake. The attempt to make the defense at law is not conclusive in equity—the defense could not be made at law. 47 Ala. 449; 35 Ala. 259; 37 Ala. 573; *Lanier v. Hill*, 25 Ala. 554; *Scruggs v. Driver*, 31 Ala. 274.

BRICKELL, C. J.—If it was clearly shown that the appellant was without title to lot number 25, and that it was of greater value than the other lots, its value more than equalling the unpaid purchase-money, a defense to this suit would not be established. It is undisputed that the purchasers, Bell & McMahon, had full knowledge of the infirmity of the title, now alleged. Whatever of title, or of claim to title, the appellant had, was acquired by a contract of purchase made by Bell as his agent. The obligation to convey was made to him, and by indorsement thereon, he directed the conveyance to be made to the appellant. The presumption of law is, when parties contract for the sale of lands, that the purchaser intends to become the owner, and is contracting for a good title.—*Cullom v. Br. Bank Mobile*, 4 Ala. 24. And if the vendor merely stipulates for the conveyance of the lands, or for title, his contract can be performed only by the conveyance of a good title. Or if he promises simply a deed of particular description, his duty is performed by the execution of such a deed, however defective may be the title.—*Hill v. Hobart*, 16 Me. 164; *Tinney v. Ashley*, 15 Pick. 546. But a vendor in possession, however defective may be his title, may sell, and may by the contract of sale, fix the measure of his rights and responsibilities. Fraud, or mistake, not occurring, the contract is the law controlling the rights of the parties, and it is not within the province of judicial tribunals, to modify or change it, to avoid hardships which may result from it. The obligation of the vendor in the present case is on payment of the purchase-money, not to execute a conveyance of any kind—not to clothe the vendees with an indefeasible title. It is simply to *return* the title papers he had received from Bell, and which Bell had indorsed to him, and to indorse them to Bell & McMahon—in other words simply to divest himself in their favor of whatever equity Bell's indorsement had passed to him. The stipulation is not so broad as would have been an obligation to convey by quit claim deed. The contract will be fully performed, when these papers are returned indorsed by him, and his ability to perform to that extent is not questioned. Whether the vendees can thereby acquire title, is not material—they can obtain all for which

[Dooley v. Villalonga.]

they contracted.  If they had desired to obtain more, they should have contracted for a good title.  The purchaser of lands—title to which rests in writing, can claim the exhibition from his vendor of an unbroken chain of title, and protect himself against its defects, by covenants and warranty. If he takes a warranty, he has no claim either at law, or in equity against the vendor, if there is no fraud or misrepresentation, or mistake, further than the warranty extends—it is his own fault and negligence that he did not require fuller covenants.  And when without covenant or warranty he buys, though he is evicted subsequently, he is without remedy.  The maxim *caveat emptor* then applies, and he must abide the contract into which he has entered, with all its liabilities and consequences—*Commonwealth v. McClanahan*, 4 Rand. 482; *Abbott v. Allen*, 2 Johns. Ch. 519; *Greenleaf v. Cook*, 2 Wheat. 16; *Strong v. Waddell*, 56 Ala. 471.

The purchasers must abide by the contract they have made, and can not be relieved because of consequences they had every reason to apprehend, and against which the vendor did not bind himself to indemnify.

The decree of the chancellor must be reversed, and a decree here rendered declaring the appellant entitled to relief.