WILLIAM FOY v. L. J. HAUGHTON.

*Failure of Consideration—Fraud—Negligence.*

Where the defendant had given to the plaintiff his bond for the payment of money in consideration of a quit-claim deed from the latter to land also claimed by the former, he cannot defend an action on such bond on the ground of a failure of consideration, in that, the plaintiff had no title to the land, without showing that, while in the exercise of due

diligence on his part, he had been misled by the fraudulent pretensions of the plaintiff to a title which he knew he did not possess.

(*Tilghman* v. *West*, 8 Ired. Eq., 183; *Etheridge* v. *Vernoy*, 70 N. C., 713, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1881, of CRAVEN Superior Court, before *Shipp, J.*

On the 9th of September, 1874, the defendant gave his bond to the plaintiff for $850, payable one day after date, which bond the plaintiff afterwards endorsed to one Bangert, who, upon failure of defendant to pay the same, sued the plaintiff as endorser and recovered from him for principal, interest and costs, the sum of $1.018.69, which plaintiff paid, and sues the defendant therefor. The defendant denies the right of plaintiff to recover, and says he was induced to give the bond through the fraudulent practices of the plaintiff. That being the owner of a tract of land in Jones county, he had covenanted to sell it to one McIver and to convey it to him by deed with warranty of title. Sometime afterwards he was informed by McIver that the plaintiff claimed to have title to the land, and that he would not complete his contract of purchase unless the defendant would get a quit-claim deed from the plaintiff. That plaintiff really had no title to the land, but as defendant believes, for the purpose of defrauding him, had caused to be registered in Jones county a deed for the same from one Pritchett, as sheriff of said county, wherein it was recited that, at a sale for taxes on the 2nd of March, 1872, by a predecessor of the then sheriff, the plaintiff had been the purchaser of said land, which deed purported on its face to have been made on the 27th of August, 1873, (within eighteen months after such sale for taxes) when in fact it had not been made until 9th May, 1874. That being deceived by means of said antedated deed, and supposing it to have been made, as on its face purported to be, and that

the plaintiff acquired some title to the land under it, the defendant was induced in order to remove an obstacle in the way of his selling the land to McIver, to take a quit-claim deed from the plaintiff, and to give the note sued on therefor. That as defendant is informed the plaintiff had the deed prepared and took it himself to Pritchett for his signature, and that he knew therefore of its being ante-dated.

As a counterclaim the defendant sets up the same alleged fraudulent conduct of plaintiff with reference to the sheriff's deed, and says he was thereby injured by being put to expense and costs in defending an action the said Bangert (the plaintiff's assignee) had brought against him upon the said bond. &c.

On the trial in the court below, the defendant was the only witness examined in the cause and testified that he gave the bond under the following circumstances: That supposing himself to be the owner of the land, he had contracted to sell it to McIver, who, however, declined to complete the contract on the ground that he had discovered an outstanding title in the plaintiff under a sale made for taxes. Afterwards he and the plaintiff met in Raleigh and had some conversation about the title, in which the plaintiff proposed to sell to him, but nothing being accomplished they separated, agreeing to meet again in Newbern and settle the matter.

They did subsequently meet there in the office of the defendant's brother, when they agreed on terms, and the bond was given and the deed made to defendant. He asked the defendant for his deed from the sheriff, who replied that he did not have it with him, and that he had come to settle the matter, and that it must be done then or not at all. That the land was sold for taxes in March, 1872, the deed from the sheriff was prepared and dated in September, 1873, but delivered and registered in May, 1874—more than eighteen

months after the sale. Upon this state of facts the defendant's counsel insisted that the deed from the sheriff to the plaintiff was void, and conveyed no title, and that it was a fraud practiced upon the defendant, as it bore date in September, 1873, and was not delivered until May, 1874.

His Honor charged the jury that if at the time the land and deed were executed, the plaintiff had a deed from the sheriff under the sale for taxes, which he believed conveyed to him a good title, he would be entitled to recover, whether such was its effect or not, as in that case there would be no fraud. The case closes with a statement that "the court also intimated an opinion that so far as the delivery of the tax deed was concerned the plaintiff ought not to be prejudiced by the laches of the sheriff."

The jury found all the issues in favor of the plaintiff, and from the judgment rendered in his behalf the defendant appealed.

*Messrs. Green & Stevenson*, for plaintiff.
No counsel for defendant.

Ruffin, J. As the defendant was without the aid of counsel in this court, and his exception points to no particular error, we have carefully examined the whole case to discover if possible something of which he has a right to complain, without, however, being able to do so. As stated in his own answer, his right to the relief he asks seems doubtful. There is not a single allegation of any false affirmation on the part of the plaintiff in regard to his title to the land, or the date, or efficacy of his deed from the sheriff, nor the slightest pretence that the defendant had ever seen the registry of that deed before completing his contract with the plaintiff.

So far as the allegations of the defendant go, all that the plaintiff did in the premises was to have his deed registered

in the county in which the land lay, and this he was not only encouraged by the law to do, but required by every fair consideration of duty, seeing that the defendant was about to sell, and the purchaser should have notice before parting with his money of plaintiff's claim to the land, whether well founded or otherwise.

But upon the proof, the defendant being the only witness deposing, the weakness of his case becomes apparent. When the parties are brought face to face, whether at Raleigh or Newbern, there is literally nothing in the conduct of the plaintiff as given by defendant himself, from which a purpose to defraud and circumvent the defendant can be a legitimate inference.

On the contrary, it is apparent, as well from the testimony as the pleadings, that the defendant had doubts as to the validity of the title he was getting from the plaintiff, and that his object in buying was to rid his own title of all question, and thereby remove all objections on that score which might be entertained by McIver; otherwise, it is impossible to account for the defendant's willingness to accept from the plaintiff a mere quit-claim in lieu of an absolute deed for the land.

Conceding, even, that the law imposes upon every vendor the duty of disclosing every known defect in his title to the subject of the sale, there is nothing to show that the plaintiff in this case was aware of the existence of the defect in his deed now suggested by the defendant beyond that presumption of the knowledge of the law which all persons are supposed to have—a presumption, however, which is never so far indulged as to convict a party of fraud who is *in fact* innocent. As said in the case of *Tilghman* v. *West*, 8 Ired. Eq., 183, fraud cannot exist, as a matter of fact, where the *intent* to deceive does not exist, for it is emphatically the action of the mind which gives it existence. But the rule of law is that in sales of land it is the duty of a purchaser to

guard against all defects as well of title as of encumbrance or quantity, by taking proper covenants looking to the end, and if he fail to do so it is his folly, against which the law, that encourages no negligence, will give him no relief.

If there be on the part of the vendor any act of *actual misrepresentation*, or other *positive fraud* in regard to a material matter reasonably relied on, then the purchaser will be afforded relief, otherwise the maxim of *caveat emptor* applies in all courts, whether of law or equity. *Etheridge* v. *Vernoy*, 70 N. C., 713.

The charge given by his Honor to the jury in this case it being one in which a fraudulent intent to deceive is alleged, very properly left the question of the guilty knowledge on the part of the plaintiff to be determined by the jury, that being the point upon which the whole case hinged.

As to the intimation which it is said in the case he gave to the jury about the effect which the laches of the sheriff should have upon the plaintiff's title, we confess we do not see its pertinency, but as we cannot see that it worked any harm to defendant, or indeed, tell what his Honor did say on the point, we must decline to disturb the judgment rendered in the court below on account thereof.

No error. Affirmed.