[S. F. No. 4621. Department One.—April 30, 1908.]

## J. B. O'SULLIVAN, Respondent, v. S. N. GRIFFITH, Appellant.

FRANCHISE—STREET RAILROAD—GRANT OF RIGHT, TITLE, AND INTEREST. —An instrument whereby the grantor grants "his right, title and interest in and to and under" certain street-railroad franchises in a municipality, is a transfer of the estate or property rights created by the original grant of the franchises and not merely of the document containing the grant.

ID.—FRANCHISE IS INCORPOREAL HEREDITAMENT.—The right to use the streets of a city as a way upon which to build and operate a street railroad is a right in real property, an incorporeal hereditament.

ID.—GRANT EQUIVALENT TO QUITCLAIM DEED—WANT OF TITLE IN GRANTOR.—A grant whereby the grantor purports to convey only his right, title, and interest in certain street-railroad franchises, with no covenants of title, is in effect a mere deed of quitclaim, and in the absence of fraud or mistake, the grantee is not relieved from

the *obligation* of paying the purchase price merely because the grantor had no title to the franchises. The same rule would obtain if the grant were regarded merely as a transfer of the instruments by which the franchises were granted.

ID.—COVENANT OR WARRANTY — RECITAL IN GRANT—FRANCHISE "DULY GIVEN."—The law will not imply a covenant or warranty that the franchises purporting to be conveyed were valid from a mere recital in the instrument of transfer that they had been "duly given" to the grantor and his assignors. A covenant or warranty is never implied from a mere recital. Words sufficient to create an agreement are essential.

ID.—LAW OF FOREIGN STATE—PRESUMPTION.—In the absence of proof to the contrary, it is presumed that the law of another state respecting the transfer of a street-railroad franchise, is the same as the law of this state.

ID.—PRESUMPTION APPLIES TO STATUTORY LAW.—The presumption in this state as to the similarity of the laws of a foreign state applies to statute law as well as to the common law.

ID.—TRANSFER OF STREET-RAILROAD FRANCHISE.—In this state a street-railroad franchise may be transferred whether held by a corporation or a natural person, and no formal or express consent of the state is necessary. And in the absence of proof to the contrary, the law of Nevada is presumed to be the same.

ID.—CONSENT OF STATE NOT NECESSARY TO TRANSFER.—A provision in a grant of a street-railroad franchise requiring the grantee to form a corporation to build and operate a street-railroad and to cause corporate bonds to be issued to the grantor in payment for the franchise, is not contrary to public policy or of such effect as to make the entire contract void.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

N. C. Caldwell, for Appellant.

Smith & Ostrander, for Respondent.

SHAW, J.—Appeal from a judgment and from an order denying defendant's motion for a new trial.

Plaintiff sued to recover two thousand seven hundred dollars alleged to be due as the purchase price of all the right, title, and interest of plaintiff and J. Wiseman MacDonald in certain street-railroad franchises in Reno, Nevada, sold and conveyed by plaintiff and MacDonald to the defendant.

The conveyance to the defendant recited the fact that the franchises had been duly given to the plaintiff and two other persons who had subsequently transferred their interest to the plaintiff, and then proceeded thus: "Now it is witnessed that for a valuable consideration the said J. B. O'Sullivan hereby grants, bargains, sells, conveys and assigns to S. N. Griffith, of Fresno, California, all and every his right, title and interest in and to and under said franchises and each of them." Mac-Donald had previously obtained from O'Sullivan an option to purchase the franchises, and a clause was added to the effect that he likewise assigned and conveyed to O'Sullivan his interest under the option. A separate instrument of the same date was simultaneously executed, whereby Griffith agreed that he would at once form a corporation to build and operate the roads and cause it to issue bonds secured by a mortgage upon the roads and would buy said bonds to the amount of two thousand seven hundred dollars, par value, and deliver the same to MacDonald within six months from the date of the contract, and that, "if said bonds are not issued and delivered in said time, the said Griffith shall pay to the said MacDonald the sum of twenty-seven hundred dollars." MacDonald assigned to plaintiff all his interest under the contract. The defendant did not cause said bonds to be issued and delivered to MacDonald within the six months specified, or at all.

The defendant alleged in his answer that the promise to pay the money sued for was without consideration. This claim is based on allegations that, under the laws of Nevada, the proceeding by which the alleged franchises were granted to the original grantees were so defective in several particulars that they were wholly void and that, in consequence, the grants of the franchises were void, or, in other words, that the grantors of the defendant had no title to the franchises they attempted to convey to Griffith, that he received nothing for the transfer, and hence, that there was no consideration. In support of this answer defendant offered in evidence the law of the state of Nevada. An objection that the evidence was immaterial and incompetent was sustained, and this ruling is assigned as error.

Appellant's argument is in part based on the theory that the things granted and forming the consideration of the promise were the papers or documents by which the grant of the

franchise was manifested, and not the right to use the streets as a way upon which to construct and operate a street-railroad. This is not the effect of the conveyance to Griffith. O'Sullivan and MacDonald did not merely transfer the paper, but, as the instrument itself declares, O'Sullivan and Mac-Donald each granted "his right, title and interest in and to and *under* the franchises." This language purports to transfer the estate or property rights created by the original grant and not merely the document containing the grant. The right to use the streets of a city as a way upon which to build and operate a street-railroad is a right in real property, an incorporeal hereditament. (*Stockton etc. Co.* v. *San Joaquin Co.,* 148 Cal. 319, [83 Pac. 54].) The grant to Griffith purports to convey only the right, title, and interest of the grantors, with no covenants of title, and is, in effect, a mere deed of quitclaim. (*Gee* v. *Moore,* 14 Cal. 472; *Allan* v. *Holton,* 20 Pick. (Mass.) 458.) The case therefore stands upon the same ground as a suit for the price of land granted by quitclaim deed, where the grantor had no title in the premises. "It has long been the settled rule at the common law, that where there are no covenants of seizin, etc., in the deed, the defendant cannot avoid payment of the purchase money on the ground that the title existed elsewhere than in the grantor." (*Fowler* v. *Smith,* 2 Cal. 44.) It is no defense to a note given in consideration of the conveyance to the maker of all the interest of the payee in a tract of land, that the payee had no interest in the land, unless the sale was procured by the fraud of the payee, or by reason of mistake of such a character that equity would relieve the maker from its effects. (Rawle on Covenants, sec. 321; *Perkins* v. *Bradford,* 3 N. H. 522; *Tobin* v. *Bell,* 61 Ala. 125; *Owens* v. *Thompson,* 4 Ill. 502; *Hulett* v. *Hamilton,* 60 Minn, 21, [61 N. W. 672]; *Smith* v. *Winston,.* 3 Miss. 601; *Foy* v. *Haughton,* 85 N. C. 168; *Cross* v. *Noble,* 67 Pa. St. 74.) The defendant, by the conveyance, obtained exactly what his contract calls for,—that is, all the right,. title, and interest of the grantors in and under the franchises. No fraud or mistake is alleged. The grantors did not covenant that they had any interest, but only conveyed such as they had. In such cases the purchaser is deemed to take all the risk of title upon himself. The answer did not show a want of consideration and the evidence was properly rejected.

The appellant assumes, without argument, that from the recital in the instrument transferring the franchises to him that the franchises had been "duly given," the law will imply a covenant or warranty that they were valid. This assumption is not well founded. In Rawle on Covenants, section 280, that author says: "Owing to a misapprehension of one or two old cases, the dangerous doctrine has been more than once broached that covenants for title may be implied from a recital, but this has since been distinctly and decisively repudiated." A covenant or warranty is never implied from a mere recital. The true rule is thus stated in Comyn's Digest, quoted with approval in *Hale* v. *Finch*, 104 U. S. 269: "Any words in a deed which show an agreement to do a thing, make a covenant. But where words do not amount to an agreement, covenant does not lie." An agreement may be set forth in a deed as well as in any other writing. And where it is so expressed, an action will lie for its breach whether it is contained in a recital or elsewhere in the conveyance. But it must be so drawn as to express a contract, and a mere recital that a fact has transpired, that a franchise has been duly given, cannot be turned into an agreement to be held responsible in the event that it was not legally granted. The recitals in the conveyance that the franchise in the city of Reno was duly given by the city council, and regularly confirmed at a special election, that the franchise in the county of Washoe was duly given and that both franchises had been duly transferred to O'Sullivan do not state any contract or agreement on the part of the grantors. They merely declare the chain of title and serve as a more particular description of the thing quitclaimed to Griffith. They might constitute an estoppel against the grantors in the instrument, but they do not express any agreement. (*Ferguson* v. *Dent*, 8 Mo. 669; *Peck* v. *Hensley*, 20 Tex. 678.)

The same rule would obtain if the grant is regarded merely as a transfer of the instruments by which the franchises were granted. In that event, there being no warranty, fraud, or mistake, the rule is that the doctrine of *caveat emptor* applies, and the fact that the instrument transferred was void, is no defense to an action for the price. (*Christy* v. *Sullivan*, 50 Cal. 337; *Sutro* v. *Rhodes*, 92 Cal. 117, [28 Pac. 98]; *Harvey* v. *Dale*, 96 Cal. 160, [30 Pac. 14].)

The case of *Mayer* v. *Richards*, 163 U. S. 383, [16 Sup. Ct. 1148], was decided according to the rule of the civil law prevailing in Louisiana, whereby a sale or transfer of the thing implies a warranty of title. (See *Fowler* v. *Smith*, 2 Cal. 44.) It has no application in this state, where the common-law rule on that subject prevails. We do not think the decision in *Amestoy* v. *Electric R. T. Co.*, 95 Cal. 311, [30 Pac. 550], announces a doctrine contrary to the common-law rule on this subject as settled by the decisions above cited.

The defendant further answered that under the law of the state of Nevada the franchises in question could not be assigned without the consent of the state. It may be conceded that the allegation on this point is an allegation of fact as to the law and not a mere conclusion. It is not necessary to decide the question whether or not it is sufficient in form, for there was no offer to prove the laws of Nevada on this point. The offer which counsel for the defendant made to prove certain things by the law of Nevada cannot reasonably be construed as an offer to prove that that law did not permit the transfer of a franchise of this kind without the consent of the state. The defense therefore must rest upon the presumption which prevails in this state concerning the law of another state in the absence of proof thereof. Such law in that case is presumed to be the same as the law of this state. (*Hickman* v. *Alpaugh*, 21 Cal 266; *Hill* v. *Grigsby*, 32 Cal. 60; *Masters* v. *Lash*, 61 Cal. 624; *Shumway* v. *Leakey*, 67 Cal. 460, [8 Pac. 12]; *Mortimer* v. *Marder*, 93 Cal. 178, [28 Pac. 814]; *Lux* v. *Haggin*, 69 Cal. 255, [4 Pac 919, 10 Pac. 674]; *Cavallaro* v. *Texas etc. Ry. Co.*, 110 Cal. 357, [52 Am. St. Rep. 94, 42 Pac. 918]; *Brown* v. *San Francisco Gas Co.*, 58 Cal. 426.) This rule applies to statute law as well as to the common law. (*Cavallaro* v. *Texas etc. Co.*, 110 Cal. 357, [52 Am. St. Rep. 94, 42 Pac. 918].) In this state a street-railroad franchise may be transferred, whether held by a corporation or natural person, and no formal or express consent of the state is necessary. (Civ. Code, secs. 494, 510, 511.)

The franchises in question were not personal property and the provisions of the civil law and the decisions relating to warranties implied from the sale of personalty have no application to this case. As above stated, there is no pleading attempting to show that the sale was made through fraud on

the part of the grantors or by the mistake of the defendant. It is not alleged that the defendant was ignorant of the actual facts in regard to the proceedings for the granting of the franchises nor that he relied on any representations or recitals in the deed, nor that he was not as well informed as to the validity of the franchises, both in law and in fact, as the plaintiff and MacDonald.

We do not perceive any ground on which to hold that the stipulations in the agreement sued on requiring Griffith to form a corporation to build and operate a street-railroad and to cause corporate bonds to be issued to MacDonald in payment for the franchises,—that is, the rights of way upon which the road was to be built,—are contrary to public policy or of such effect as to make the entire contract void. It seems to be a perfectly legitimate and valid undertaking.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank and filed the following opinion on the 12th of June, 1908.

BEATTY, C. J., dissenting.—Having dissented from the order denying a rehearing of this cause, I will here briefly state the grounds of such dissent.

A street-railway franchise is created and granted by the same act. If in a case like this no franchise is granted, it is because no franchise is created. The defense to the action was not merely that the assignors of plaintiff had no title to the franchise, but that there had never been a franchise, and this was what the defendant offered to prove. If he had been allowed to make, and had succeeded in making, the proof that no franchise ever came into existence the case would have been materially different from that arising upon the conveyance of all one's right, title, and interest in a tract of land. There would have been the wide difference between the conveyance of a thing in existence, and of a thing nonexistent, and the authorities cited to the proposition that the purchaser of a possible title to a tract of land cannot avoid payment of the

agreed price by proving that the vendor had no title seem to me to have no application to an action to recover the agreed price of a thing which the vendor represented to be in existence, but which in fact never did exist.