## HORR *et al. v.* BARKER *et al.*

A delivery of a warehouse-receipt, stating that the goods named therein are deliverable on return of the receipt, is sufficient *prima facie* to pass the title. There is no substantial difference, in this respect, between a warehouse-receipt and a bill of lading.

When the defendants show that the person to whom, in his own name, the receipt was given, and who passed it to plaintiff, was their agent, or broker, acting for them, but permitted to keep it on storage in his own name, they do not rebut the *prima facie* case made out by the plaintiffs, by the possession of the receipt.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

In December, 1853, Hussey, Bond & Hale sold to Barker & Paddock a large quantity of flour, in store at the warehouse of Tilden & Little. A portion of the purchase-money was paid in hand, and the remainder was to be paid at stated periods, with the understanding that Barker & Paddock might withdraw any portion of the flour, from time to time, by paying the full price

for the portion withdrawn. On the twenty-first of January, 1854, Barker and Paddock paid Hussey, Bond & Hale for several hundred barrels, including three hundred and twenty-four barrels of Haxall. For this lot, a delivery-order was drawn by Hussey, Bond & Hale, on Tilden & Little, in favor of J. R. West, the broker of Barker & Paddock. West surrendered this order to Tilden & Little, who gave him a warehouse-receipt for the flour, in which they contracted to deliver the same upon return of the receipt. This receipt was passed by West, without endorsement, to plaintiffs, who surrendered the same to Tilden & Little, and took a warehouse-receipt for three hundred and twenty-four barrels of Haxall flour. The flour was seized by the defendants, and plaintiffs brought this suit, in which they recovered judgment, for the value of the three hundred and twenty-four barrels of Haxall flour. The defendants moved for a new trial, which was granted, and the plaintiffs appealed.

This case was before this Court in October, 1856, and will be found reported in 6 Cal. R., 489.

*Shafter, Park & Shafter,* for Appellants.

No segregation of the three hundred and twenty-four barrels of Haxall from the bulk was necessary. Upon this point, we refer to the argument and authorities cited in the other case between the same parties.

If segregation was necessary, then it had been accomplished before the seizure by the defendants, and that has been once so held in this case.

This ruling forecloses the question entirely in this action. Clay *v.* Hoagland, Oct. T., 1855.

It is, moreover, a correct decision, and should not be disturbed.

This brings us to the real question in the case, and that is—

Did the possession of the receipt and indices of title by the plaintiffs, in connection with the conduct of the defendants relative thereto, *prima facie* show title in the plaintiffs?

It is unnecessary to go over the history of commerce and commercial law, for the purpose of tracing the growth of the principles applicable to the subject. It is sufficient to say, that bills of lading, warehouse-receipts, etc., are now universally regarded as furnishing evidence of title sufficient to establish the fact of ownership.

In Wilkes and Fontaine *v.* Ferris, 5 Johns., 335, a case universally cited upon this point, it was held, in case of a receipt of sugars received from A, " to be at his disposal upon paying storage," that the sugars were delivered by the delivery of the receipt, (to a third party,) and that it " was the regular documentary evidence of title, and gave to such third party the command of the sugars." The case does not disclose any endorsement of the receipt, but only a transmission; a mere delivery of the re-

ceipt being regarded as a sufficient manifestation of design to execute his right of "disposal" upon the point of the original depositor.

The above case is cited and adopted by the Supreme Court of the United States in Gibson v. Stevens, 8 How., 384. The intention of the parties, as manifested by delivery of these "evidences of title," is to be regarded by the Court "without embarrassing it with needless formalities." The duty of the Court to take judicial notice of these customs of trade, is fully declared. Gardner v. Howland, 2 Pick., 599; Brown v. Peabody, 3 Kir., 121; Bank of Rochester v. Jones, 4 Com. R., 497.

All the above cases establish, that these receipts are evidence of ownership of the goods, in the possessor of such receipts, and that they are transferable by delivery.

These show possession in us, and possession is conclusive evidence of property, unless a superior title is made out. These defendants only show, that at a time prior to the claim of title, they had been the owners of the property in question. This claim might be set up by any one who preceded us in the chain of title, and if the defendants are correct, it would be sufficient to entitle such former owner to recover, notwithstanding our possession, and the presumptions attending it. We submit that the *onus probandi* is always upon him who attacks the title of the possessor of personal goods, and that that *onus* is not shifted by showing a former interest or title in the assailant.

This action has been once before in this Court, upon which occasion the same point was presented for judgment in the record, and must be presumed to have been passed upon. Horr et al. v. Barker and Paddock, 6 Cal., 489.

Such judgment is conclusive in this action. Clay v. Hoagland, *ante;* Pingay v. Watkins, 17 Vt., 379.

*Janes, Lake & Boyd,* for Respondents.

Upon the foregoing facts, the Judge at the trial charged in substance that the plaintiffs had made out a title to the three hundred and twenty-four barrels of Haxall flour, and the jury rendered a verdict accordingly. But on a motion for a new trial he became convinced that the charge was erroneous, and granted the motion, and it is from the order granting a new trial that the plaintiffs appeal.

This Court has frequently held that the granting a new trial is mainly a matter of discretion with which it will not ordinarily interfere, unless there is a palpable abuse of discretion on the part of the Court below. But whether that rule applies to this case or not, the appellants, in order to reverse the order granting a new trial, must show that each and every decision and ruling of the Judge on the trial was correct.

There are three points in regard to which the plaintiffs failed on the trial to make title to the flour in question :

1. Conceding that West was authorized to sell the flour as agent for the defendants, no title passed to the plaintiffs, because the three hundred and twenty-four barrels were parcels of a larger quantity, and they never were so selected and separated as to enable the plaintiffs to identify them as their own property.

2. The possession of the warehouse-receipt by the plaintiffs, was no evidence of a sale by West to the plaintiffs of the flour named in the receipt.

3. If the possession of such receipt should be held *prima facie* evidence of a sale to them by West, yet on the defendants showing that the flour in fact belonged to them, and not to West, it then devolved upon the plaintiffs to show that they were *bona fide* purchasers for value.

The language of the authorities is that "no sale is complete so as to vest in the vendee an immediate right of property, so long as anything remains to be done between the buyer and seller in relation to the goods." The object of a separation from the bulk or mass with which they happen to be mixed, is that they may not only be distinguished by the purchaser and identified as his own goods, but that they may be accepted as the identical property embraced in the contract of purchase.

The mere possession of the warehouse-receipt by the plaintiff, was no evidence of a sale by West to them of the flour named in the receipt. It is not such by any custom of trade, nor by authority of adjudged cases.

It has been attempted, and perhaps successfully, to liken warehouse-receipts to bills of lading of goods at sea, and to bring them consequently within the principle laid down in Lickbarrow v. Mason, (1 Smith's Leading Cases, p. 378.) But the principles of that case go no further than to hold that goods being sold or hypothecated, endorsement and delivery of the bills of lading operate as a transfer of the property.

"The property is transferred by the sale, which sale is just as effectual in passing the property without as with the endorsement of the bill of lading. The only effect of the bill of lading is due to its being a symbol of property. A bill of lading will pass the property upon a *bona fide* endorsement and delivery where it is intended so to operate, in the same manner as a direct delivery of the goods themselves would do, if so intended. But it cannot operate further." Lickbarrow v. Mason, 1 Smith's Leading Cases, Am. Notes, 650.

So, if goods sold were stored with other goods in a common or public warehouse, as the vendor would not have the key to deliver them, the receipt held by the vendor of the person who has the custody, is considered a proper symbol of delivery.

Gardner v. Howland, 2 Pick, 599 ; Gibson v. Stevens, 8 Howard U. S.; 386.

The precise point contended for is, that the endorsement to, and possession by the purchaser, of a bill of lading or warehouse-receipt, is evidence of a symbolical delivery, a sale being proved.

In this case, however, there is not even an endorsement of the warehouse-receipt to the plaintiffs. They are found in the possession of a receipt which appears to belong to another person.

If the possession of the warehouse-receipt by Horr & Dick should be deemed *prima facie* evidence of their ownership of the property called for by the receipt, such evidence is rebutted by the defendants showing that the flour in fact belonged to them, and that West was a mere broker. The possession of the warehouse-receipt could confer no more power over the property than would the possession of the property itself.

Now, suppose Horr & Dick in possession of the flour, and Barker & Paddock suing them in trover for it. Barker & Paddock offer the same evidence of ownership as they gave in this case, would it be contended for a moment that Horr & Dick would not be required to show title in themselves? To dispute the correctness of this rule, would be to contend that in all cases the owner of personal property, who has been deprived of it either by theft, force, or fraud, before he can recover it back must be able to prove affirmatively that he did not sell it, and that it was taken from him unlawfully; proof that in the very nature of things it is not ordinarily in his power to make, and which he is never required to make.

BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The counsel of defendants insist that there was no sufficient segregation of the three hundred and twenty-four barrels from other flour. But it is unnecessary to notice this point, as it was determined by this Court when the case was here before, October, 1856. The segregation was decided to have been sufficient.

The next point made by defendant to sustain the order of the Court below in granting a new trial, is that the possession by plaintiffs of the warehouse-receipt issued to West, was no evidence of a sale by West to them, as the receipt was not endorsed, and no other proof was given of an actual sale.

From the testimony, the proof would seem ample to justify the conclusion that West was the broker of defendants, and fully authorized to sell the flour. The only question left is, whether the evidence was sufficient to sustain the verdict of the jury, that there was a sale of the three hundred and twenty-four barrels to plaintiffs.

Chancellor Kent laid it down that "the delivery of the receipt

40

of the store-keeper for the goods, being the documentary evidence of the title, has been held to be a constructive delivery of the goods." 2 Kent, 500. And he refers to the case of Walker & Fontaine v. Ferris, 5 John. R., 335. The case referred to seems to sustain the position in the text, although the facts of the case are not very clearly stated as to the question whether the store-keeper's receipt was endorsed, or not. So, it is stated in Story on Sales, § 311, that "the delivery of the key of a warehouse containing the goods sold, or of the bill of lading of goods at sea, or of the receipt, ticket, sale-note, dock-warrant, certificate, bill of parcels, or other usual type and evidence of title to goods in the situation of those sold, will be a sufficient constructive delivery of them to pass the title." "So, also, the delivery to the vendee of an order on the warehouseman in whose warehouse the goods are stored, is sufficient to pass the title, but not to destroy the lien of the vendor." § 312. The same doctrine is laid down in Story on Contracts. §§ 810, 792.

It was said by Gardiner, C. J., in delivering the opinion of the Court, in the case of Brown v. Peabody, 3 Ker., 126, that "the receipts, although recognized as *prima facie* evidence of property in the thing receipted, in those who have them in possession, do not, it is presumed, enter into the currency, and, like bank-notes, become the property of a *bona fide* holder." The receipts, in that case, had been stolen, and the holder, upon that fact being established, was held not entitled to the property mentioned in the receipts. So, in the case of the Bank of Rochester v. James, 4 Cow., 497, it was said that the title to goods might be transferred by the delivery of the bill of lading, if done with that intent. The same was substantially stated in Stanton v. Small, 3 Sandford, 240.

It seems to be well settled, that a delivery of a bill of lading for goods at sea, will pass the title. Story on Contracts, § 810; 2 Kent, 500; 24 Pick. R., 42; 5 John. R., 335.

But it must be conceded, that while the language of these authorities seems to be clear, that a delivery of a warehouse-receipt, without assignment, is sufficient *prima facie* to pass the title, there are very few adjudged cases where the facts fully sustain the opinion expressed. However, upon principle, reason, and convenience, it is difficult to draw any substantial distinction between a bill of lading and a warehouse receipt. If the delivery of the one can pass the title to the property described therein, the delivery of the other should have the same effect. There is no substantial difference in the two cases. In this case the flour was "deliverable," not to West, or his order, but "on return of the receipt." From the terms of the receipt it seems to have been intended to pass from hand to hand, without endorsement.

But conceding that the possession of the receipt was *prima*

*facie* evidence of the ownership of the property specified, the defendants insist that such presumption was rebutted by their showing that the flour in fact belonged to them, and that West was a mere broker.

The fact that the property was originally purchased of H. B. & H., by the defendants, did not rebut the *prima facie* case made out by plaintiffs; because the case so made out, consisted in showing that West was the agent of defendants for the sale of the flour, and was permitted to keep it on storage, in his own name, and the receipt given to their agent was found in the possession of plaintiffs; which fact was, in effect, the same as if the receipt had been given to defendants in their own names, and had afterwards been found in the possession of the plaintiffs. The plaintiffs traced their title, through West, to defendants, and they cannot rebut such a case by showing *they* once had the title. When they show that they once had the title, they only show what the plaintiffs had already shown.

Our conclusion is, that the testimony was sufficient to warrant the verdict, and that there was no error in the refusal of the Court to give the instructions asked for by the defendants, and no cause for granting a new trial.

The order of the Court below is reversed, and that Court will enter judgment for plaintiffs.