52   611
110  359

52   611
139  276

[No. 5410.]

## JOHN T. DAVIS *v.* H. C. RUSSELL ET ALS.

WAREHOUSE RECEIPT.—The transfer of a warehouse receipt in good faith, and in the ordinary course of business, operates to transfer to the holder the title to the goods covered by the receipt.

IDEM.—There is no difference between a warehouse receipt and a bill of lading in this respect.

CONSIDERATION.—A pre-existing debt is a sufficient consideration.

INSTRUCTION.—Where there is evidence tending to establish a fact, the Court should not refuse a proper instruction in reference to that fact.

IDEM.—Under the facts of this case, the refusal of the following instruction held to be error: "The possession of the instrument in writing produced in evidence, dated August 18th, 1875, and called a warehouse receipt, covering

this wheat in controversy, together with the plaintiff's indorsement thereon, is of itself presumptive evidence of the ownership of the grain, by the person having such possession of such receipt so indorsed."

APPEAL from the District Court, Fifth Judicial District, County of San Joaquin.

Defendant appeals.
The facts are set out in the opinion.

*Byers & Elliot* and *Hewell & Turner*, for Appellants.

I. The Court erred in point of law in the instruction given at the request of plaintiff, and excepted to by defendants — because, if Davis did not sell the wheat to Barney, still the indorsement and delivery of the warehouse receipt *did* invest Barney with the title to the property. (*Vide* secs. 1459, 2991, Civil Code, Cal.; 8 Cal. 609.)

II. The indorsement and delivery of the warehouse receipt vested the title in Barney, and a hypothecation by Barney to an innocent pledgee *would protect such pledgee* from any action upon the part of Davis. (*Vide Horr* v. *Barker et al.* 8 Cal. 609; *Ghirardelli* v. *McDermott*, 22 Cal. 539; *Thompson* v. *Toland*, 48 Cal. 99; *Gibson* v. *Stevens*, 8 How. U. S. Rep. 399 and 400; *Conaud* v. *Atlantic Ins. Co.* 1 Peters, 445; Story on Sales, 5th ed. secs. 310, 311; secs. 1142, 1459, and 2991, Civil Code, Cal.)

*Terry, McKinne & Terry, Budd & Son,* and *F. T. Baldwin,* for Respondent.

I. A factor cannot pledge as security for his individual debt the goods of his principal intrusted to him for sale.

"A power to sell for the benefit of his principal (says Mr. Chief Justice FIELD, in *Wright* v. *Solomon*, 16 Cal. 72) can in no way be stretched into a power to pledge for his own benefit; nor does it make any difference whether the party taking the pledge was ignorant as to the extent of the factor's authority, or that the factor was not the real owner of the property. Whoever deals with an agent, constituted for a special purpose, deals

at his peril when the agent passes the precise limits of his power. * * To pledge the goods of the principal is beyond the limits of the factor's powers, and every attempt to do it under color of sale is tortious and void. If the pawnee will call for the letter of advice, or make due inquiry, he can discover (say the cases) that the possessor held the goods as factor and not as vendor, and he is bound to know at his peril the extent of the factor's power."

A pledge by a factor of the goods of his principal confers no right at common law, not even that of the factor to be reimbursed. (*Patterson* v. *Tash*, 2 Strange, 1178; *Kinder* v. *Shaw*, 2 Mass. 398; *Odiorne* v. *Maxcy*, 13 Mass. 178; *Newbold* v. *Wright*, 4 Rawle, 195; *Shaw* v. *Stone*, 1 Cush. 228.)

II. The indorsement and delivery of a warehouse receipt is a mere symbolic delivery of the possession of the property mentioned in it, and although the possession of personal chattels is evidence of ownership, it is still merely evidence, and will not supply the want of title when it does not actually exist. (1 Smith's Leading Cases, 1197; *Dows* v. *Perrin*, 16 N. Y. 335.)

III. Such transfers are not governed by the same rule as transfers of personal chattels.

As to goods, the rule is that no man can be divested of his property without his consent, and consequently that even an honest purchaser under a defective title cannot hold against the true owner, and that a sale *ex vi termini* imparts nothing more than that the *bona fide* purchaser succeeds to the rights of the vendor. (2 Kent's Com. 334; *Saltus* v. *Everett*, 20 Wend. 267.)

IV. If the pledges were for any reason binding on the property of Davis he would still be the owner of the property, subject to the pledge; and if the debt for which it was pledged was paid, he would be entitled to possession. (2 Smith's Leading Cases, 1189; In U. Westzinthers, 5 B. & B. 817.)

By the COURT:

Davis being the owner of a lot of wheat, deposited it in the warehouse of Russell, took a warehouse receipt for it in the usual form, and thereafter indorsed the same in blank and de-

livered it to Barney.  Barney transferred the receipt to the
Bank of Stockton, and the bank transferred it to a person not a
party to the action, and the wheat was afterward delivered by
Russell to the holder of the receipt.  The bank was notified by
Davis that he had not sold the wheat to Barney, but the wit-
nesses do not agree whether the notice was before or after the
bank transferred the receipt.  Before the wheat was delivered
to the holder of the warehouse receipt, Davis made a demand
upon Russell for a delivery of the wheat, but Russell refused
so to do unless the receipt was returned to him.  Davis claims
that Barney was only his agent for the sale of the wheat, and
that he—Barney—transferred the receipt to the bank as security
for an antecedent debt due from him to the bank.  The defend-
ants claim that Barney purchased the wheat from Davis, that
he transferred the receipt 'to the bank not only as security for
an antecedent debt, but also for further advances, which were
afterward made, and that the transfer by the bank was prior
to the time when it was notified that Davis had not sold the
wheat to Barney.

The jury found for the plaintiff.

The Court was requested by the defendants to give the fol-
lowing instruction: "The possession of the instrument in writ-
ing produced in evidence, dated August 18th, 1875, and called
a warehouse receipt, covering this wheat in controversy, to-
gether with the plaintiff's indorsement thereon, is of itself pre-
sumptive evidence of the ownership of the grain, by the person
having such possession of such receipt so indorsed"; but the
Court refused to give the instruction, and gave the following
instructions at the plaintiff's request: "If the jury believe from
the evidence that the plaintiff did not sell the wheat in contro-
versy to Barney, but authorized him to sell the same at a fixed
price for cash, to be paid on or before delivery, then the in-
dorsement and delivery of the warehouse receipt did not vest
Barney with the title of said property, or deprive plaintiff of
his title and right to the possession of the wheat"; also, that
"the instrument in writing called a warehouse receipt is not a
contract for the payment of money or personal property, and
cannot be transferred by indorsement, like a negotiable promis-

sory note." Other instructions were given embodying the same legal proposition. There was evidence introduced by the defendants tending to show that Barney had purchased the wheat from the plaintiff, and that the warehouse receipt, indorsed in blank by the plaintiff, had been transferred to the Bank of Stockton, and by the bank transferred to a person not a party to the action, before the bank was notified by the plaintiff that he had not sold the wheat to Barney; and the defendants were entitled to have instructions given to the jury which would state the effect of such transfers of the warehouse receipt.

The foregoing instruction, requested by the defendants, ex presses very fairly the law in that regard. It was held in many cases in the English Courts that an assignment of such a receipt does not amount to a constructive delivery of the goods until the warehouseman is notified thereof, and agrees to hold the goods for the assignee. (Benjamin on Sales, sec. 815.) No substantial reason is offered for giving to the assignment of such an instrument an effect differing materially from that of an assignment of a bill of lading. In *Horr* v. *Baker*, (8 Cal. 613) a warehouse receipt was regarded as standing on the same footing as a bill of lading; and it was held that a transfer of such receipt operated as a transfer of the title to the goods. The doctrine of that case has not been questioned, so far as we are aware, by the Courts of this State. If an assignment of the receipt will transfer the title to the goods, it must necessarily follow that the possession of the receipt, indorsed in blank, is presumptive evidence of the ownership of the goods by the holder of the receipt. The defendants were entitled to an instruction which would give them the benefit of that presumptive evidence; although, as between the plaintiff and Barney, and those claiming under Barney, with notice that he was only the agent of the plaintiff, (if such was the fact) the plaintiff remained the owner of the wheat.

The Court also instructed the jury that "if you believe from all the evidence in this case that Davis did sell the wheat in question to Barney, your verdict will be for the defendants. * * * If, however, you find that there was no sale of this wheat, and that there was a demand and refusal of it by the

party, then it is your duty to find a verdict for the plaintiff for a return of the wheat or its value." This instruction entirely ignores any rights which any of the defendants may have acquired, in reliance upon the apparent ownership or authority of the holder of the warehouse receipt, and in that respect is erroneous.    It is provided by the Civil Code, sec. 2991, that " one who has allowed another to assume the apparent ownership of property, for the purpose of making any transfer of it, cannot set up his own title to defeat a pledge of the property made by the other to a pledgee who received the property in good faith, in the ordinary course of business, and for value."    The evidence seems to leave no room for doubt that the Bank of Stockton received the warehouse receipt from Barney in good faith, and in the ordinary course of business; and upon the authority of *Payne* v. *Bensley*, (8 Cal. 260) *Robinson* v. *Smith*, (14 Cal. 94) *Naglee* v. *Lyman*, (14 Cal. 450) and *Frey* v. *Clifford*, (44 Cal. 355) it must be held that the pre-existing debt of Barney to the bank constituted a valuable consideration within the meaning of that section.    If the evidence brings the case within that section, neither the Bank of Stockton nor Russell would be liable to the plaintiff in this action.

Judgment and order reversed, and cause remanded for a new trial.