[No. 15992.    Department Two.—December 10, 1895.]

# L. S. CAVALLARO, RESPONDENT, v. TEXAS AND PACIFIC RAILWAY COMPANY, APPELLANT.

COMMON CARRIER—DELIVERY OF GOODS TO WRONG PARTY.—Where goods *shipped to a consignee were delivered by a common carrier to a third party, who personated the consignee, and received, receipted for, and paid the freight thereon, whereby the goods were lost to the shipper, the carrier so misdelivering the goods is liable to the shipper for their value.*

ID. — INTERMEDIATE CARRIAGE — LIABILITY OF FINAL CARRIER.—Where goods are shipped through several carriers upon a through shipment, the final carrier is liable to the owner under its common-law liability, whether there was an express contract between it and the shipper, or only such agreement as the law implies from the acceptance of the goods directed to the consignee at the end of its route.

ID.—MISDELIVERY NOT EXCUSABLE.—No circumstances of fraud, imposition, or mistake will excuse a common carrier from responsibility for delivery to the wrong person; but the law exacts of him absolute certainty that the person to whom the delivery is made is the party rightfully entitled to the goods.

ID.—CHANGE OF LIABILITY TO THAT OF WAREHOUSEMAN—NOTICE TO CONSIGNEE ESSENTIAL.—A common carrier cannot ~ange his liability to that of a warehouseman as to goods which h? ~d at the place of consignment, without giving notice to the c( , the arrival, and where the notice is given by mistake to t¹ / person, it cannot have the effect to change the liability of t¹ ,r to that of a warehouseman.

ID.—LAWS OF ANOTHER STATE—PRESUMPTION.- ⅃ the absence of proof to the contrary, the laws of another state will be presumed to be the same as those of California, and this presumption extends to statutory law, as well as to the common law.

ID.—RULE REQUIRING NOTICE—DECLARATORY STATUTE.—The rule of the statute of California requiring notice to be given by the carrier to a consignee is a declaration of the law as it existed prior to that statute in a majority of the states and in England.

ID. — PLACE OF DELIVERY — FREIGHT CONSIGNED GENERALLY. — Where freight is consigned to the consignee at the terminus of the route generally, without specifying delivery at a place of business, the station or depot of the railroad is the place of delivery.

ID.—EXONERATION OF CARRIER—UNINDORSED BILL OF LADING.—A carrier is not exonerated from liability by delivery of the goods to a holder of the bill of lading where it is unindorsed and not payable to bearer, and where such holder is not the consignee, and not entitled to the delivery of the goods.

ID.—MISDELIVERY OF GOODS BY WAREHOUSEMAN.—A carrier acting as a warehouseman is not authorized to deliver goods to a stranger who presents an unindorsed bill of lading, and who is not identified as the consignee, or as having any right to the bill of lading or to the goods.

INSTRUCTIONS—GENERAL EXCEPTION.—A general exception to each and all of the instructions given by the court of its own motion is not sufficient to authorize a review of the instructions so given.

ID.—EXCEPTION TO SPECIAL INSTRUCTIONS.—The rule that a general objection to instructions as not sufficient has no application to special instructions asked by the parties, and given or refused by the court, concerning which a general exception is sufficient.

ID.—NEGOTIABILITY OF WAREHOUSE RECEIPTS AND BILLS OF LADING.—Warehouse receipts are negotiable unless they have the word "non-negotiable" printed in red ink across their face, and when negotiable an indorsement of the receipt operates as a valid transfer of the property represented by the receipt; and there is no difference between a warehouse receipt and a bill of lading in this respect.

ID.—REPEATED DELIVERIES TO WRONG PERSON.—In the absence of any act or conduct on the part of the consignor whereby he is estopped, the carrier cannot be relieved from repeated deliveries to the wrong person, upon the ground that the same person who presented himself as the consignee of subsequent shipments, lived and carried on business at the street and number at which similar business was carried on by the true consignee.

ID.—DISTINCTION BETWEEN SPECIAL AND GENERAL CONSIGNMENT OF GOODS. Different considerations arise in cases where goods are consigned to a given number and street, and are there delivered to a person apparently the one to whom they were consigned, and in cases where the goods are consigned generally without specific designation.

ID.—PLEADING—COUNT AGAINST COMMON CARRIER—RECOVERY AGAINST CARRIER AS WAREHOUSEMAN.—Where the defendant, whether regarded as a common carrier or as a warehouseman, is liable for misdelivery of the goods, a plaintiff who has counted upon the liability of defendant as a common carrier may recover against such carrier as a warehouseman.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial.    W. G. LORIGAN, Judge.

The facts are stated in the opinion.

*H. V. Morehouse,* for Appellant.

An express contract with the Atlantic & Pacific Railroad Company does not prove an implied contract with this defendant.  (*Cohen* v. *Express Co.,* 53 Ga. 130.)  The court erred in instructing the jury, in effect, that the bill of lading not being indorsed, the delivery was a misdelivery.  When a bill of lading is made to bearer, or equivalent terms, a simple transfer by delivery is sufficient. (Civ. Code, sec. 2128; Porter on Bills of Lading, secs.

500–04; *Bank of Rochester* v. *Jones,* 4 N. Y. 497; 55 Am. Dec. 290.)    Possession of the bill of lading, though not indorsed, was evidence that the holder was the true owner and entitled to the possession.    (*Holmes* v. *German Security Bank,* 87 Pa. St. 525; *Holmes* v. *Bailey,* 92 Pa. St. 57; *Merchants' Bank* v. *Union R. R. etc. Co.,* 69 N. Y. 373; 8 Hun, 249; *City Bank* v. *Rome etc. R. R. Co.,* 44 N. Y. 136.)    Leaving a notice with the person in charge of a man's place of business is sufficient.    (*Hirshfield* v. *Central Pac. R. R. Co.,* 56 Cal. 484; *Constable* v. *National etc. Co.,* 154 U. S. 51.)    As the contract in the bill of lading was that if the goods were not taken within business hours on the day of arrival, they should be stored at the owner's risk, the liability of defendant was that of a warehouseman.    (*Collins* v. *Burns,* 63 N. Y. 1; *Tarbell* v. *Royal Exch. Shipping Co.,* 110 N. Y. 170; 6 Am. St. Rep. 350; *Wilson* v. *California Cent. R. R. Co.,* 94 Cal. 166.)    If the carrier delivers to the place indicated, or does what is equivalent to a delivery there, he does all that he is bound to do.    (Civ. Code, sec. 2131; *Glidden* v. *Lucas,* 7 Cal. 29; *M'Kean* v. *M'Ivor,* L. R. 6 Ex. 36.)

*William P. Veuve,* for Respondent.

Proof that plaintiff delivered the freight to the Atlantic & Pacific Railroad Company, and that thereafter it was delivered to defendant, who accepted and carried it and delivered it to an imposter, entitles the plaintiff to recover.    (*Southern Exp. Co.* v. *Urquhart,* 52 Ga. 142; *O'Rourke* v. *Chicago etc. R. R. Co.,* 44 Iowa, 526.)    The bills of lading in question are not to bearer, and do not pass title by delivery simply.    (Civ. Code, secs. 2128, 2131; Porter on Bills of Lading, sec. 493.)    The law exacts of the carrier absolute certainty as to the person to whom delivery is to be made, and puts on him the entire risk of mistakes in this respect.    (*Adams* v. *Blankenstein,* 2 Cal. 413; 56 Am. Dec. 350; *Douglas* v. *People's Bank of Kentucky,* 86 Ky. 176; 9 Am. St. Rep. 276; *Louisville etc. R. R. Co.* v. *Barkhouse,* 100 Ala. 543; *National Bank* v. *Atlanta etc. Ry. Co.,* 25 S. C. 216; 3 Wood's Railway

Law, secs. 445, 446, and cases cited; *McEntee* v. *New Jersey Steamboat Co.*, 45 N. Y. 34; 6 Am. Rep. 28; *Rogers* v. *Weir*, 34 N. Y. 463; *Ball* v. *Liney*, 48 N. Y. 6; 8 Am. Rep. 511; Hutchison on Carriers, sec. 344, et seq., and cases cited.) In order to reduce defendant's liability to that of a warehouseman, there should have been personal service of notice on the consignee. (Civ. Code, sec. 2120.) In the absence of any showing that the law of Louisiana is different, it will be presumed to be the same as that of this state. (*Palmer* v. *Atchison etc. R. R. Co.*, 101 Cal. 187.)

SEARLS, C.—This is an appeal from a final judgment in favor of plaintiff for twelve hundred and fifty-five dollars and ninety-six cents and costs, and from an order denying a motion of defendant for a new trial.

Defendant is a railroad corporation organized and existing under and by virtue of the laws of the United States, and is a common carrier of freight and passengers from El Paso, in the state of Texas, by the way of Fort Worth, to New Orleans, in the state of Louisiana. Plaintiff is a citizen and resident of the state of California.

On the twenty-fourth day of October, 1894, the plaintiff shipped from Oakland, California, forty barrels of white wine, by the Atlantic & Pacific Railroad Company, and on the twenty-fifth day of October he shipped from San Jose, California, by the same company, forty-one barrels of red wine, all consigned to "V. Lo Secco, New Orleans, La.," for which two shipments plaintiff received from the said Atlantic & Pacific Railroad Company separate duplicate bills of lading in the usual form.

One set of these duplicate bills of lading was forwarded by the plaintiff per registered letters addressed "V. Lo Secco, 29 Hospital street, New Orleans," and United States registered return receipts were in due time returned to him at San Jose, California, signed "V. Lo Secco, J. Lo Secco."

The goods were forwarded under some regulations among the several companies, over the Southern Pacific Coast Line to Mojave; Atlantic & Pacific to Albuquerque, thence by Atchison, Topeka & Santa Fe to Purcel, by Gulf Colorado & Santa Fe to Forth Worth, and thence by the Texas & Pacific, the defendant herein, to New Orleans, Louisiana.

There was evidence touching the proportion of freight received by each of these connecting companies, and as to their traffic association. The goods were received by the defendant at Fort Worth and shipped thence to New Orleans, where the freight was collected by said defendant and the goods delivered.

There is no dispute as to these facts, and the crucial question is, Were they delivered to the consignee, and, if not, was the defendant guilty of such negligence as renders it liable in damages for the value of the property?

There was testimony tending to establish the following facts: V. Lo Secco, the consignee, was, and for many years had been, a commission merchant in New Orleans, whose principal business was receiving consignments of oranges and other fruit, which he sold on commission, and usually at public auction. He owned the premises at 29 Hospital street, and had his office in the rear of the building. The front part of the building was occupied by D. Lo Secco, a nephew of V. Lo Secco, as a grocery and saloon.

V. Lo Secco was a man of wealth and reputation, say sixty years of age, six feet high, weighing from two hundred to two hundred and fifty pounds, with gray hair. D. Lo Secco was a rather small man, say twenty-five to thirty years of age, with black hair, etc. V. Lo Secco could not write, and never ordered the wine, or had any communication with plaintiff, but the latter knew the former by reputation, and shipped the goods to him to be sold on commission for account of plaintiff. One consignment reached New Orleans November 9, 1892, and was delivered November 25, 1892. The

other arrived November 4, 1892, and was delivered December 6, 1892.

When the first consignment reached its destination, defendant sent its messenger to 29 Hospital street, to notify the consignee, and, in answer to interrogatories, a man whom the messenger describes, and who was doubtless D. Lo Secco, professed to be such consignee, and in the name of V. Lo Secco signed an acknowledgment of notice of the arrival of the consignment. The same thing was repeated in the same manner upon the arrival of the second consignment.

A man answering to the description of D. Lo Secco, and not answering to the description of V. Lo Secco, called at the office of defendant with one of the bills of lading November 25th, claimed to be the consignee, paid the freight, receipted for the goods in the name of V. Lo Secco, and took them away.

The same thing was repeated with the other consignment, December 6th, except that the bill of lading was not presented to defendant. There was evidence that the signature "V. Lo Secco" was in the handwriting of D. Lo Secco. D. Lo Secco disappeared from New Orleans soon after this transaction, and has never returned.

The consignee, V. Lo Secco, knew nothing whatever of the shipments to him, never received the bills of lading, or any notice of the shipment, and appears to have had no knowledge whatever of the transaction until after the goods disappeared.

The witnesses for the defense spoke of knowing one V. Lo Secco in connection with the shipment and delivery of the wine, but in every instance in describing him they gave a description of D. Lo Secco, and not one applying to V. Lo Secco.

The evidence is clearly to the effect that D. Lo Secco personated the consignee of the goods, V. Lo Secco, received, receipted for, and paid the freight thereon, and then disappeared. The evidence was amply sufficient on the head indicated to warrant the jury in finding a verdict in favor of plaintiff.

A number of contentions of appellant, without taking them up *seriatim*, may be answered in this wise: It is established law of England: 1. That when the carrier accepts for carriage goods directed to a destination beyond its own route, it assumes by the very act of acceptance, in the absence of any express contract on the subject, the obligation to transport them to the place to which they may be directed. This was first decided in what is known as the "Muschamp case" (*Muschamp* v. *Lancaster etc. Ry. Co.*, 8 Mees. & W. 421), and has been ever since steadily adhered to. 2. As an apparent corollary of the first proposition, the English courts have also held that, in all cases included therein, the first carrier becomes exclusively responsible for the carriage and safety of the goods to their destination, and, no matter by whom injured or lost, the first carrier alone can be sued by the aggrieved party, and any attempt to hold the subsequent or connecting carrier liable must, notwithstanding the loss may have occurred through its negligence, fail for want of privity of contract between such carrier and the injured party. (Hutchinson on Carriers, secs. 146, 147.)

Upon the first of the foregoing propositions the American courts are divided. The majority of them, however, hold against the English doctrine, as unjust to the carrier and as unnecessary upon grounds of public policy, and assert the true rule to be that in the absence of any contract, except such as is implied from the acceptance of the goods for carriage, the obligation of the carrier extends only to the end of his route, and a proper delivery there to the next succeeding carrier to further or complete the carriage. And in order to be bound further a positive agreement, either express or implied, is necessary. And this is called the American rule. (Hutchinson on Carriers, sec. 149, and cases cited.)

Upon the second proposition the courts of the United States, both federal and state, are believed to be, with a single exception, a unit in holding that either with or without a contract under which the first carrier becomes

liable for loss or injury to goods until they reach their destination, the owner may seek redress from any intermediate carrier who is in fault. The exception alluded to is the state of Georgia, and in that state the English rule is now mainly abrogated by statute.

The theory upon which the connecting carrier is held liable for his own default or misfeasance to the owner is based upon the ground that the receiving carrier is the agent of the owner to forward and deliver to the next succeeding or connecting carrier, who in turn becomes the agent of the principal, and not the subagent of the first agent, and hence liable.

Whatever may be the basis of the doctrine, it is one of well nigh universal application in this country, and, as is said by Hutchinson on Carriers, at section 150: "The rule which allows the action against the carrier in fault, as well as against the one who is primarily responsible, certainly commends itself upon grounds of both justice and convenience, and, with the above exception [Georgia], is the universal law of this country."

The complaint in this case avers, among other things the delivery of the property to defendant as such common carrier, and its receipt upon the agreement aforesaid (that is to say, to carry the same to New Orleans and there deliver it to V. Lo Secco), and its misdelivery, whereby it was lost to plaintiff. If the defendant, as a common carrier, received property consigned to a person in New Orleans to be carried over its road terminating in that city, it became liable to the owner for negligence or misfeasance, in doing so, under its common-law liability, whether there was an express contract or only such agreement as the law implies. In *Church* v. *Atchinson etc. R. R. Co.*, 1 Okla. 44, relied upon by appellant, there was no allegation in the complaint that the goods were ever delivered to or received by the defendant.

The last duty required of the common carrier is that of delivery. This is a duty imposed upon him by law; as soon as he accepts the goods, and whether so expressed

or not, it becomes a part of his contract. He must not only deliver goods intrusted to him to carry, but becomes also responsible for their proper delivery. (Hutchinson on Carriers, sec. 338.) The same author, at section 344, says: " No circumstances of fraud, imposition, or mistake will excuse the common carrier from responsibility for a delivery to the wrong person. The law exacts of him absolute certainty that the person to whom the delivery is made is the party rightfully entitled to the goods, and puts upon him the entire risk of mistakes in this respect, no matter from what cause occasioned, however justifiable the delivery may seem to have been, or however satisfactory the circumstances or proof of identity may have been to his mind; and no excuse has ever been allowed for a delivery to a person for whom the goods were not directed or consigned. . . . . If, however, the delivery be made to the wrong person, whether by an innocent mistake or through fraud practiced upon the carrier, such wrongful delivery will be a conversion." (*Adams* v. *Blankenstein,* 2 Cal. 413; 56 Am. Dec. 350.)

The contention of appellant that its liability as a common carrier had ceased before the delivery, and that it became and was at the date of such delivery only liable as a warehouseman, cannot be maintained.

Under section 2120 of our Civil Code, a common carrier may reduce his liability to that of a warehouseman, as to goods which have arrived at the place of consignment, by giving notice to the consignee of the arrival, and, if the place of residence or business of such consignee is not known, the notice may be given by letter dropped in the nearest postoffice.

Appellant sought to serve notice in the present case upon the consignee in person, but by mistake and through the fraud of D. Lo Secco the notice was served upon him and not upon V. Lo Secco, the consignee. This was no notice to the consignee, and did not have the effect of changing the liability of the carrier to that of a warehouseman. (*Wilson* v. *California Cent. R. R. Co.,* 94 Cal. 166.)

If it be claimed that the determination in this case turns upon the law of the state of Louisiana, and not upon that of California, the answer must be: 1. In the absence of proof to the contrary, the laws of another state will be presumed to be the same as our own, and this presumption extends to statutory as well as to the common law. (*Hickman* v. *Alpaugh*, 21 Cal. 225; *Shumway* v. *Leakey*, 67 Cal. 460; *Marsters* v. *Lash*, 61 Cal. 624; *Mortimer* v. *Marder*, 93 Cal. 172.)   2. The rule requiring notice to be given is but a declaration of the law as it existed prior to the statute in a majority of the states and in England. (*Wilson* v. *California Cent. R. R. Co., supra;* Hutchinson on Carriers, secs. 373, 374, and notes.)

This is not a case of the delivery of goods at the residence or place of business of the consignee.   The freight was consigned to V. Lo Secco, New Orleans, Louisiana, and hence the station or depot of the defendant was the place of delivery, and the fact that D. Lo Secco, to whom the goods were delivered, had procured and presented a duplicate of the bill of lading to defendant, which was not assigned or indorsed by either the consignor or consignee, was no excuse or justification to defendant for delivering the goods to him without further identification.

"A carrier is exonerated from liability for freight by delivery thereof, in good faith, to any holder of a bill of lading therefor, properly indorsed, or made in favor of the bearer." (Civ. Code, sec. 2131.)

This section of the code has no application to the case in hand, because the bill of lading *was not made to bearer, and was not indorsed by the recipient to whom it was issued.*   Numerous questions arise, and some of them difficult ones, in relation to assignments, mortgages, hypothecation, etc., of bills of lading.   None of these questions are involved here, as there is no evidence in the record upon which to predicate them, except the mere fact that D. Lo Secco possessed and presented the defendant an unindorsed bill of lading, which did not, and could not under our law, give him

any title to the freight therein described. (Civ. Code, sec. 2127.)

The uncontradicted evidence of the witnesses Leland and Sterne, supplemented by the deposition of Toomey, and by the bills of lading introduced by consent, and the way bills, were sufficient to authorize the jury to conclude that the through bills of lading were authorized by the defendant.

The court, upon its own motion, instructed the jury at considerable length. The only objection or exception to the instructions thus given is as follows: counsel for defendant said: "We desire, if your honor please, to save an exception to each, every, and all of the instructions given by the court of its own motion."

It is objected, on the part of respondent, that this exception is not sufficiently specific to warrant this court in scrutinizing the instructions given by the court upon its own motion. The current of authority seems to render it imperative that we sustain the objection of respondent, and decline to examine and pass upon the legality of the court's instructions.

The theory of the rulings is, that exceptions to the charge of a court to the jury ought to point out specifically the portions excepted to, and be made at the time of trial, in order that the judge may have an opportunity, before the jury retires, to correct any error he may have inadvertently fallen into in drawing up the charge in the hurry and perplexities of the trial. (*Hicks* v. *Coleman*, 25 Cal. 122; 85 Am. Dec. 103; *Sill* v. *Reese*, 47 Cal. 294; *Rider* v. *Edgar*, 54 Cal. 127; *Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414; *Brown* v. *Kentfield*, 50 Cal. 129; *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 409; *Sukeforth* v. *Lord*, 87 Cal. 399.)

The doctrine of these cases, and of others of like import, have established a rule of practice in this state from which we do not feel at liberty to depart. This rule, of course, has no application to the special instructions asked by the parties and given or refused

by the court, concerning which a general exception has always been held sufficient.

There was no error in the refusal of the court to give the instructions asked on behalf of the defendant, numbered from 1 to 7, both inclusive. The first of these instructions involved the proposition that if the two shipments of wine reached New Orleans on the ninth and fifteenth days of November, 1892, respectively, and were not called for or demanded until the twenty-first day of November and the sixth day of December, respectively, then the defendant's liability, if any, was not that of a common carrier, but that of a warehouseman, and that plaintiff could not recover.

The answer to this proposition is two-fold: 1. The evidence showed clearly that V. Lo Secco, the consignee, had no notice whatever, either in fact or such as is provided by statute, of the arrival of the goods, and until notice thereof defendant held the same as a common carrier and subject to its liability as such; 2. Even as a warehouseman, defendant was not authorized to deliver the goods to a stranger who presented a bill of lading not indorsed, and who was not identified in any way as the consignee, or as having any right to the bill of lading, or the goods of which it was a symbol.

Warehouse receipts are negotiable unless they have the word "non-negotiable" printed in red ink across their face, and when negotiable an indorsement of the receipt operates as a valid transfer of the property represented by such receipt.   (Stats. 1877–78, p. 949.)

A transfer of a warehouse receipt in good faith, etc., passes the title to the goods covered by the receipt. (*Davis* v. *Russell*, 52 Cal. 611; 28 Am. Rep. 647.)   There is no difference between a warehouse receipt and a bill of lading in this respect. (*Davis* v. *Russell*, *supra*; *Bishop* v. *Fulkerth*, 68 Cal. 607; Civ. Code, secs. 2127–31.)

The second instruction is to the effect that the defendant, in the absence of other instructions, had a right to deliver the first shipment of wine to the person who presented the bill of lading and surrendered it, and the

third is to the effect that if the same person who deliv-
ered the bill of lading presented himself as the true
consignee of the second shipment of wine, and in both
instances claimed to be the true consignee and so re-
ceipted for the wine, and paid the freightage thereon,
and that the bills of lading had been sent by the con-
signor to V. Lo Secco, and the person who claimed and
received the wine lived and carried on business, includ-
ing the selling of wines at 29 Hospital street, New Or-
leans, and that defendant notified him there of its
arrival, then the jury should find for the defendant.

In the absence of some act or conduct on the part of
the consignor whereby he is estopped, of which there is
no evidence, these instructions are not an embodiment
of the law, unless an unindorsed bill of lading, in the
hands of a stranger thereto, is sufficient evidence of
ownership to warrant the delivery by a common carrier
to the person so holding such bill of lading. We have
hereinbefore stated that such a delivery does not excuse
the carrier.

The fifth instruction is covered by what has been said
of the third and fourth.

The sixth instruction is covered by the instructions
given by the court, and it was not necessary to repeat
it.

The seventh instruction goes upon the false theory
that the goods were consigned to 29 Hospital street, New
Orleans, when they were not in fact so consigned, and
then seeks to gauge the duty of the defendant on that
hypothesis. This was not proper to be done.

Different considerations frequently arise in cases
where goods are consigned to a given number and street,
and are there delivered to a person apparently the per-
son to whom they are consigned, but, in this case, ques-
tions of that character are not properly involved.

We are of opinion that the defendant, whether re-
garded as a common carrier or as a warehouseman, is
liable for the misdelivery of the goods in question, and
that the plaintiff who had counted upon the liability of

defendant as a common carrier may, in every proper case, recover against such carrier as a warehouseman. (*Hoyt* v. *Nevada County* etc. *R. R. Co.*, 68 Cal. 644; *Wilson* v. *California Cent. R. R. Co.*, *supra*.)

The judgment and order appealed from should be affirmed.

HAYNES, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.