[L. A. No. 24521.   In Bank.   Aug. 30, 1957.]

GLOBE AND RUTGERS FIRE INSURANCE COMPANY (a Corporation), Respondent, v. AIRBORNE FLOWER AND FREIGHT TRAFFIC, INC. (a Corporation), Appellant.

Wallace, Garrison, Norton & Ray and Maynard Garrison for Appellant.

Joseph F. Rank and Russell K. Lambeau for Respondent.

SHENK, J.—This is an appeal from a judgment for the plaintiff for damages in the sum of $11,755 for the loss of a carton of furs. The sole question is whether the judgment should be reduced to $50 as specified in an airbill contract of cartage.

United Air Lines is an air carrier engaged in the transportation for hire of passengers and freight in interstate and intrastate commerce. Its contract cartage agent makes ground delivery of freight carried on interstate flights. It has no tariff on file with the California Public Utilities Commission governing ground delivery of freight carried on its intrastate flights. Delivery of goods carried on those flights is accomplished by trucking concerns independent of United.

The defendant, Airborne Flower and Freight Traffic, is an air freight forwarder. As an adjunct to its forwarding

business it performs trucking services for air carriers which operate from the San Francisco Air Terminal.

In June 1953 Saks Fifth Avenue delivered 10 cartons of furs to United Air Lines at the Los Angeles airport for shipment by United to the San Francisco airport. The goods were consigned to Saks' San Francisco Store. Saks declared the value of the goods to be $50 and an airbill was issued so stating. The airbill recited that the shipment consisted of ten cartons of furs weighing 269 pounds, designated Saks' San Francisco store as the consignee and requested morning delivery. No delivery charges were stated on the airbill. Under the applicable tariff, Saks' declaration limited United's liability for loss or damage to $50. The actual value of the shipment was greatly in excess of its declared value, but it was undervalued for the apparent purpose of securing a lower rate from United whose charges are based in part upon the declared value of the shipment.

When the furs arrived at the San Francisco airport, they were received by the defendant which gave United a receipt for 10 cartons of furs. As stated by Airborne's claims agent Airborne solicits trucking business from air carriers which operate from the San Francisco airport and it also furnishes delivery service to air carriers at their request. It cannot be determined from the record which of these procedures was followed in the procurement of the shipment here involved. Some time after receipt by the defendant, but before delivery to Saks' San Francisco store, one carton containing furs worth $11,755 was lost by or stolen from the defendant. The plaintiff sues by right of subrogation under its policy of insurance with Saks.

The facts are undisputed as is the defendant's liability. The controversy relates to the amount of the liability. The defendant contends that its liability is limited by Saks' declaration of value and United's tariff which, had the furs been lost by United, would have limited United's liability to $50. The plaintiff asserts that the defendant is liable for the actual value of the furs.

The airbill which was signed by Saks' agent at the Los Angeles airport recites: "It is mutually agreed that the goods herein described are accepted in apparent good order . . . for transportation as specified herein, subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law. Said classifications and tariffs, copies of which are available for inspection by the

parties hereto, are hereby incorporated into and made a part of this contract.''

Rule 3.3 of the intrastate tariff filed by United Air Lines with the California Public Utilities Commission provides: ''Except as provided in Rule 3.2 the carrier's liability shall in no event exceed the declared value of the shipment. . . .''

Rule 3.1(b) of the same intrastate tariff provides: ''The Airbill, or other shipping document, and the tariffs applicable to the shipment shall inure to the benefit of and be binding upon the consignor and consignee and the carriers by whom transportation is undertaken between the origin and destination, including destination on reconsignment or return of the shipment; and shall inure also to the benefit of any other person, firm or corporation performing for the carrier pick-up, delivery, or other ground service in connection with the shipment.''

■ To bring itself within the terms of the tariff, the defendant must show that it performed the delivery service for United. United's route ended at the San Francisco terminal, and upon its delivery of the shipment to Airborne, United's liability to Saks was terminated.[1]

■ The trial court found that Airborne ''. . . was not handling said shipment as an agent of United Air Lines or on behalf of United Air Lines in any other capacity, but . . . was handling said shipment as a carrier for hire on its own account as an independent contractor and carrier.''

The record does not disclose how Airborne procured the shipment from United. Airborne may have solicited the shipment or it may have been summoned by United and requested by it to make the delivery. Although the evidence was not developed on this point it is sufficient to support the finding of the trial court that Airborne acted as an independent contractor and not as an agent of United. It was employed to obtain a result—the delivery of the shipment to Saks' San Francisco store. No control was retained or exercised over the means by which it performed that task. It was free to choose the route, driver, type of vehicle and manner of delivery, and it used its own driver and equipment in making the delivery. This case is to be distinguished from *Twentieth*

---

[1] California Civil Code, section 2201. ''If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier carrying to the place of address, or connected with those who thus carry, and his liability ceases upon making such delivery.''

*Century Delivery Service, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 242 F.2d 292 relied upon by the defendant. In that case, a subrogated insurer of a shipper sought to recover against a connecting carrier the sum paid to the shipper for damage by the connecting carrier to a coffee vending machine. The shipment was carried subject to an airbill of lading which incorporated the air carrier's tariffs. The applicable tariff provided, as in the present case, that it should inure to the benefit of any person performing delivery service for the air carrier. The airbill executed between the shipper and the air carrier included charges for the delivery of the shipment and the tariff was construed to include the defendant within its coverage. It was held that the limitation of liability contained in the tariff inured to the benefit of the connecting carrier and the plaintiff's recovery was thus limited to the declared value of the shipment.

The defendant contends that it acted as an agent of Saks and as such is entitled to the limitation of liability. There is no evidence relating to the arrangements between United and Saks at the time of the shipment from the Los Angeles airport or between United and the defendant at the San Francisco airport. ██ The instructions "Pls. A. M. delivery" indorsed on the airbill was Saks' only instruction relating to the delivery of the furs. It cannot be said that that instruction alone was sufficient to make Airborne an agent of Saks. The defendant contends, however, that the contract between the shipper and United controls the relationship between the shipper and itself on the ground that United was a "mere forwarder" of the goods to the defendant who then became the "agent" of the shipper, performing the delivery service subject to the terms of the airbill. (*Cf.* 9 Am.Jur., Carriers, § 889.) The defendant relies upon *Cavallaro* v. *Texas & Pac. Ry. Co.*, 110 Cal. 348 [42 P. 918, 52 Am.St.Rep. 94]. In that case, this court held a subsequent or connecting carrier liable to the shipper for misdelivery of goods. In so holding, it was stated that the theory upon which the shipper's action was predicated was that the connecting carrier was the agent of the shipper to forward or deliver the goods and was therefore liable to the shipper for its default or misfeasance. An agency relationship between the shipper and the connecting carrier was used to explain the theory of the action and to distinguish a line of English cases to the contrary. In *Muschamp* v. *Lancaster etc. Ry. Co.*, 8 Mees. & W. 421, it was held that a shipper could recover against the first carrier for loss of goods by a

subsequent carrier. As a corollary to the Muschamp case, the English courts held that the shipper could not recover against a connecting carrier because there was no "privity of contract" between the shipper and the connecting carrier. (Hutchinson on Carriers, 3d ed., §§ 228, 229.) The Cavallaro case states the theory upon which the "privity of contract" limitation was abandoned, giving the shipper a cause of action against the connecting carrier for loss of or damage to his goods, but it does not require the incorporation into every contract for the carriage of goods by a connecting carrier, the provisions of the original bill of lading without consideration of all of its terms and the circumstances under which the parties contracted.

The defendant contends that the airbill was a through bill of lading and that Airborne was entitled to its benefits. It relies upon a statement in 9 American Jurisprudence, Carriers, section 388, which defines a through bill of lading as ". . . one whereby the carrier agrees to transport the goods from the point of delivery to a designated point of destination, although such transportation extends over the line of a connecting carrier." If the airbill were a through bill it may well be that its provisions including the limitation of liability would inure to Airborne.

■ The trial court further found and concluded that the contract of carriage between Saks and United did not require United to deliver the shipment to its destination in San Francisco. The evidence amply supports this conclusion. United's tariff did not provide for delivery by it of goods carried on intrastate flights. The shipment was accepted by United subject to that tariff. The airbill shows a charge by United for air transportation only. No charge was made by United for ground delivery. Upon the arrival of the shipment at the San Francisco airport Airborne received it, weighed it, and determined the applicable rate for its transportation to San Francisco. Saks paid United for transportation of the furs to the San Francisco airport. Airborne billed Saks directly and a separate charge for Airborne's services was paid by Saks to Airborne.

■ It does not appear that the understatement by Saks of the value of the furs had any legal relationship to the liability of Airborne. Its freight charges were computed by reference to weight alone and the undervaluation of the furs could not, therefore, have affected that rate.

The record supports the findings of the trial court and

justifies the conclusion that there was no basis for the limitation of the defendant's liability to Saks or through Saks to the plaintiff.

The judgment is affirmed.

Carter, J., Schauer, J., and McComb, J., concurred.

TRAYNOR, J.—I dissent.

The crucial document in this case is the airbill delivered by Saks' agent to United at the Los Angeles Airport. The consignee of the goods was Saks' San Francisco store. The airbill provided that, "Delivery will be made to the consignee at points where delivery service is available unless otherwise specified below." Saks' agent did not specify otherwise. Instead, he circled the word "delivery," inserted the street address of the San Francisco store, and under the printed words "instructions to carrier," wrote "Pls. A. M. Delivery."

From this evidence it is obvious, and counsel for plaintiff conceded in oral argument before this court, that Saks contemplated that the goods would be delivered to its San Francisco store, not left at the San Francisco Airport. Saks knew that United had no surface delivery service, and could not carry the goods to the San Francisco store itself. The only reasonable conclusion is that Saks and United understood that when the goods arrived at the San Francisco Airport, United would obtain a carrier to take the goods to the store. On behalf of Saks, and as authorized by Saks, United entered into a contract with defendant for the delivery of the goods to their contemplated destination.

What were the terms of that contract? The evidence shows without conflict that the airbill placed in the hands of United and passed on to the surface carrier was the only instruction from Saks. It was the voice of Saks in the negotiations with defendant. When defendant's agent accepted the goods, he receipted the airbill and took a copy of it. Defendant reasonably concluded that the value declared in the airbill was the value Saks was willing to place on the goods throughout their carriage to the San Francisco store. Saks should not now be allowed to claim that it meant otherwise than its own actions reasonably indicated.

I would modify the judgment by reducing it to $50 and affirm it as so modified.

Gibson, C. J., and Spence, J., concurred.